## COHEN, EXECUTRIX, ET AL. v. BENEFICIAL INDUSTRIAL LOAN CORP. ET AL.

NO. 442.

Argued April 18, 1949.—Decided June 20, 1949.

*Charles Hershenstein* and *Philip B. Kurland* argued
the cause for petitioners in No. 442 and respondents in

No. 512. With them on the brief were *Edward J. O'Mara, Samuel Dreskin* and *David F. Cohen.*

*John M. Harlan* argued the cause for the Beneficial Industrial Loan Corp., respondent in No. 442 and petitioner in No. 512. With him on the brief were *Charles Danzig* and *Walter Pond.*

Briefs of *amici curiae* in support of petitioners in No. 442 and respondents in No. 512 were filed by *Julius Levy* for Weinberger; and by *Lewis M. Dabney, Jr.*

MR. JUSTICE JACKSON delivered the opinion of the Court.

The ultimate question here is whether a federal court, having jurisdiction of a stockholder's derivative action only because the parties are of diverse citizenship, must apply a statute of the forum state which makes the plaintiff, if unsuccessful, liable for the reasonable expenses, including attorney's fees, of the defense and entitles the corporation to require security for their payment.

Petitioners' decedent, as plaintiff, brought in the United States District Court for New Jersey an action in the right of the Beneficial Industrial Loan Corporation, a Delaware corporation doing business in New Jersey. The defendants were the corporation and certain of its managers and directors. The complaint alleged generally that since 1929 the individual defendants engaged in a continuing and successful conspiracy to enrich themselves at the expense of the corporation. Specific charges of mismanagement and fraud extended over a period of eighteen years and the assets allegedly wasted or diverted thereby were said to exceed $100,000,000. The stockholder had demanded that the corporation institute proceedings for its recovery but, by their control of the corporation, the individual defendants prevented it from doing so. This stockholder, therefore, sought to assert

the right of the corporation. One of 16,000 stockholders, he owned 100 of its more than two million shares, so that his holdings, together with 150 shares held by the intervenor, approximated 0.0125% of the outstanding stock and had a market value that had never exceeded $9,000.

The action was brought in 1943, and various proceedings had been taken therein when, in 1945, New Jersey enacted the statute which is here involved.[1] Its general effect is to make a plaintiff having so small an interest liable for the reasonable expenses and attorney's fees of

---

[1] Chapter 131, New Jersey Laws of 1945, provides in pertinent part as follows:

"1. In any action instituted or maintained in the right of any domestic or foreign corporation by the holder or holders of shares, or of voting trust certificates representing shares, of such corporation having a total par value or stated capital value of less than five per centum (5%) of the aggregate par value or stated capital value of all the outstanding shares of such corporation's stock of every class . . . unless the shares or voting trust certificates held by such holder or holders have a market value in excess of fifty thousand dollars ($50,000.00), the corporation in whose right such action is brought shall be entitled, at any stage of the proceeding before final judgment, to require the complainant or complainants to give security for the reasonable expenses, including counsel fees, which may be incurred by it in connection with such action and by the other parties defendant in connection therewith for which it may become subject pursuant to law, its certificate of incorporation, its by-laws or under equitable principles, to which the corporation shall have recourse in such amount as the court having jurisdiction shall determine upon the termination of such action. The amount of such security may thereafter, from time to time, be increased or decreased in the discretion of the court having jurisdiction of such action upon showing that the security provided has or may become inadequate or is excessive.

"2. In any action, suit or proceeding brought or maintained in the right of a domestic or foreign corporation by the holder or holders of shares, or of voting trust certificates representing shares, of such corporation, it must be made to appear that the complainant was a shareholder or the holder of a voting trust certificate at the time

the defense if he fails to make good his complaint and to entitle the corporation to indemnity before the case can be prosecuted. These conditions are made applicable to pending actions. The corporate defendant therefore moved to require security, pointed to its by-laws by which it might be required to indemnify the individual defendants, and averred that a bond of $125,000 would be appropriate.

The District Court was of the opinion that the state enactment is not applicable to such an action when pending in a federal court, 7 F. R. D. 352. The Court of Appeals was of a contrary opinion and reversed, 170 F. 2d 44, and we granted certiorari. 336 U. S. 917.

## APPEALABILITY.

At the threshold we are met with the question whether the District Court's order refusing to apply the statute was an appealable one. Title 28 U. S. C. § 1291 provides, as did its predecessors, for appeal only "from all final decisions of the district courts," except when direct appeal to this Court is provided. Section 1292 allows appeals also from certain interlocutory orders, decrees and judgments, not material to this case except as they indicate the purpose to allow appeals from orders other than final judgments when they have a final and irreparable effect on the rights of the parties. It is obvious that, if Congress had allowed appeals only from those final judgments which terminate an action, this order would not be appealable.

---

of the transaction of which he complains or that his share or voting trust certificate thereafter devolved upon him by operation of law.

"3. This act shall take effect immediately and shall apply to all such actions, suits or proceedings now pending in which no final judgment has been entered, and to all future actions, suits and proceedings."

The effect of the statute is to disallow appeal from any decision which is tentative, informal or incomplete. Appeal gives the upper court a power of review, not one of intervention. So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal. But the District Court's action upon this application was concluded and closed and its decision final in that sense before the appeal was taken.

Nor does the statute permit appeals, even from fully consummated decisions, where they are but steps towards final judgment in which they will merge. The purpose is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results. But this order of the District Court did not make any step toward final disposition of the merits of the case and will not be merged in final judgment. When that time comes, it will be too late effectively to review the present order, and the rights conferred by the statute, if it is applicable, will have been lost, probably irreparably. We conclude that the matters embraced in the decision appealed from are not of such an interlocutory nature as to affect, or to be affected by, decision of the merits of this case.

This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. The Court has long given this provision of the statute this practical rather than a technical construction. *Bank of Columbia* v. *Sweeny*, 1 Pet. 567, 569; *United States* v. *River Rouge Co.*, 269 U. S. 411, 414; *Cobbledick* v. *United States*, 309 U. S. 323, 328.

We hold this order appealable because it is a final disposition of a claimed right which is not an ingredient

of the cause of action and does not require consideration with it. But we do not mean that every order fixing security is subject to appeal. Here it is the right to security that presents a serious and unsettled question. If the right were admitted or clear and the order involved only an exercise of discretion as to the amount of security, a matter the statute makes subject to reconsideration from time to time, appealability would present a different question.

Since this order may be reviewed on appeal, the petition in No. 512, whereby the corporation asserts the right to compel security by mandamus, is dismissed.

## CONSTITUTIONALITY.

Petitioners deny the validity of the statute under the Federal Constitution and the New Jersey Constitution. The latter question is ultimately for the state courts, and since they have made no contrary determination, we shall presume in the circumstances of this case that the statute conforms with the state constitution.

Federal constitutional questions we must consider, because a federal court would not give effect, in either a diversity or nondiversity case, to a state statute that violates the Constitution of the United States.

The background of stockholder litigation with which this statute deals requires no more than general notice. As business enterprise increasingly sought the advantages of incorporation, management became vested with almost uncontrolled discretion in handling other people's money. The vast aggregate of funds committed to corporate control came to be drawn to a considerable extent from numerous and scattered holders of small interests. The director was not subject to an effective accountability. That created strong temptation for managers to profit personally at expense of their trust. The business code became all too tolerant of such practices. Corporate laws

were lax and were not self-enforcing, and stockholders, in face of gravest abuses, were singularly impotent in obtaining redress of abuses of trust.

Equity came to the relief of the stockholder, who had no standing to bring civil action at law against faithless directors and managers. Equity, however, allowed him to step into the corporation's shoes and to seek in its right the restitution he could not demand in his own. It required him first to demand that the corporation vindicate its own rights, but when, as was usual, those who perpetrated the wrongs also were able to obstruct any remedy, equity would hear and adjudge the corporation's cause through its stockholder with the corporation as a defendant, albeit a rather nominal one. This remedy, born of stockholder helplessness, was long the chief regulator of corporate management and has afforded no small incentive to avoid at least grosser forms of betrayal of stockholders' interests. It is argued, and not without reason, that without it there would be little practical check on such abuses.

Unfortunately, the remedy itself provided opportunity for abuse, which was not neglected. Suits sometimes were brought not to redress real wrongs, but to realize upon their nuisance value. They were bought off by secret settlements in which any wrongs to the general body of share owners were compounded by the suing stockholder, who was mollified by payments from corporate assets. These litigations were aptly characterized in professional slang as "strike suits." And it was said that these suits were more commonly brought by small and irresponsible than by large stockholders, because the former put less to risk and a small interest was more often within the capacity and readiness of management to compromise than a large one.

We need not determine the measure of these abuses or the evils they produced on the one hand or prevented

and redressed on the other. The Legislature of New Jersey, like that of other states,[2] considered them sufficient to warrant some remedial measures.

The very nature of the stockholder's derivative action makes it one in the regulation of which the legislature of a state has wide powers. Whatever theory one may hold as to the nature of the corporate entity, it remains a wholly artificial creation whose internal relations between management and stockholders are dependent upon state law and may be subject to most complete and penetrating regulation, either by public authority or by some form of stockholder action. Directors and managers, if not technically trustees, occupy positions of a fiduciary nature, and nothing in the Federal Constitution prohibits a state from imposing on them the strictest measure of responsibility, liability and accountability, either as a condition of assuming office or as a consequence of holding it.

Likewise, a stockholder who brings suit on a cause of action derived from the corporation assumes a position, not technically as a trustee perhaps, but one of a fiduciary character. He sues, not for himself alone, but as representative of a class comprising all who are similarly situated. The interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity. And while the stockholders have chosen the corporate director or manager, they have no such election as to a plaintiff who steps forward to represent them. He is a self-chosen representative and a volunteer champion. The Federal Constitution does not oblige the state to place its litigating and adjudicating processes at the disposal of such a

---

[2] See New York General Corporation Law, § 61–b; 12 Pa. Stat. Ann. § 1322; Laws of Maryland, 1945, c. 989; Wisconsin Stat. § 180.13 (1945).

representative, at least without imposing standards of responsibility, liability and accountability which it considers will protect the interests he elects himself to represent. It is not without significance that this Court has found it necessary long ago in the Equity Rules [3] and now in the Federal Rules of Civil Procedure [4] to impose procedural regulations of the class action not applicable to any other. We conclude that the state has plenary power over this type of litigation.

In considering specific objections to the way in which the state has exercised its power in this particular statute, it should be unnecessary to say that we are concerned only with objections which go to constitutionality. The wisdom and the policy of this and similar statutes are involved in controversies amply debated in legal literature [5] but not for us to judge, and hence not for us to remark upon. The Federal Constitution does not invalidate state legislation because it fails to embody the

---

[3] Old Equity Rule 94, 104 U. S. ix; Equity Rule 27, 226 U. S. 649, 656.

[4] Rule 23 (b).

[5] See Hornstein, *Problems of Procedure in Stockholder's Derivative Suits*, 42 Col. L. R. 574; Hornstein, *Directors' Expenses in Stockholders' Suits*, 43 id. 301; Koessler, *The Stockholder's Suit: A Comparative View*, 46 id. 238; Hornstein, *New Aspects of Stockholders' Derivative Suits*, 47 id. 1; Carson, *Current Phases of Derivative Actions Against Directors*, 40 Mich. L. R. 1125; P. E. Jackson, *Reorganization of the Corporate Concept And the Effect of Section 61-b of the New York General Corporation Law*, A5 Am. Bankr. Rev. 323; Carson, *Further Phases of Derivative Actions Against Directors*, 29 Cornell L. Q. 431; House, *Stockholders' Suits And the Coudert-Mitchell Laws*, 20 N. Y. U. L. Q. Rev. 377; Hornstein, *The Death Knell of Stockholders' Derivative Suits in New York*, 32 California L. R. 123; Zlinkoff, *The American Investor And the Constitutionality of Section 61-b of the New York General Corporation Law*, 54 Yale L. J. 352. See Douglas, *Directors Who Do Not Direct*, 47 Harv. L. R. 1305.

highest wisdom or provide the best conceivable remedies. Nor can legislation be set aside by courts because of the fact, if it be such, that it has been sponsored and promoted by those who advantage from it.[6] In dealing with such difficult and controversial subjects, only experience will verify or disclose weaknesses and defects of any policy and teach lessons which may be applied by amendment. Within the area of constitutionality, the states should not be restrained from devising experiments, even those we might think dubious, in the effort to preserve the maximum good which equity sought in creating the derivative stockholder's action and at the same time to eliminate as much as possible its defects and evils.

It is said that this statute transgresses the Due Process Clause by being "arbitrary, capricious and unreasonable"; the Equal Protection Clause by singling out small stockholders to burden most heavily; that it violates the Contract Clause; and that its application to pending litigation renders it unconstitutionally retroactive.

The contention that this statute violates the Contract Clause of the Constitution is one in which we see not the slightest merit. Plaintiff's suit is entertained by equity largely because he had no contract rights on which to base an action at law, and hence none which is impaired by this legislation.

In considering whether the statute offends the Due Process Clause we can judge it only by its own terms, for it has had no interpretation or application as yet. It imposes liability and requires security for "the *reasonable* expenses, including counsel fees, which may be incurred" (emphasis supplied) by the corporation and by other parties defendant. The amount of security is subject to increase if the progress of the litigation reveals

---

[6] *Daniel* v. *Family Insurance Co.*, 336 U. S. 220.

that it is inadequate, or to decrease if it is proved to be excessive. A state may set the terms on which it will permit litigations in its courts. No type of litigation is more susceptible of regulation than that of a fiduciary nature. And it cannot seriously be said that a state makes such *unreasonable* use of its power as to violate the Constitution when it provides liability and security for payment of *reasonable* expenses if a litigation of this character is adjudged to be unsustainable. It is urged that such a requirement will foreclose resort by most stockholders to the only available judicial remedy for the protection of their rights. Of course, to require security for the payment of any kind of costs, or the necessity for bearing any kind of expense of litigation, has a deterring effect. But we deal with power, not wisdom; and we think, notwithstanding this tendency, it is within the power of a state to close its courts to this type of litigation if the condition of reasonable security is not met.

The contention that the statute denies equal protection of the laws is based upon the fact that it enables a stockholder who owns 5% of a corporation's outstanding shares, or $50,000 in market value, to proceed without either security or liability and imposes both upon those who elect to proceed with a smaller interest. We do not think the state is forbidden to use the amount of one's financial interest, which measures his individual injury from the misconduct to be redressed, as some measure of the good faith and responsibility of one who seeks at his own election to act as custodian of the interests of all stockholders, and as an indication that he volunteers for the large burdens of the litigation from a real sense of grievance and is not putting forward a claim to capitalize personally on its harassment value. These may not be the best ways of precluding "strike lawsuits," but we are unable to say that a classification for these pur-

poses, based upon the percentage or market value of the stock alleged to be injured by the wrongs, is an unconstitutional one. Where any classification is based on a percentage or an amount, it is necessarily somewhat arbitrary. It is difficult to say of many lines drawn by legislation that they give those just above and those just below the line a perfectly equal protection. A taxpayer with $10,000.01 of income does not think it is equality to tax him at a different rate than one who has $9,999.99, or to require returns from one just above and not from one just below a certain figure. It is difficult to say that a stockholder who has 49.99% of a company's stock should be unable to elect any representative to its Board of Directors while one who owns 50.01% may name the entire Board. If there is power, as we think there is, to draw a line based on considerations of proportion or amount, it is a rare case, of which this is not one, that a constitutional objection may be made to the particular point which the legislature has chosen.

The contention also is made that the provision which applies this statute to actions pending upon its enactment, in which no final judgment has been entered, renders it void under the Due Process Clause for retroactivity. While by its terms the statute applies to pending cases, it does not provide the manner of application; nor do the New Jersey courts appear to have settled what its effect is to be. Its terms do not appear to require an interpretation that it creates new liability against the plaintiff for expenses incurred by the defense previous to its enactment. The statute would admit of a construction that plaintiff's liability begins only from the time when the Act was passed or perhaps when the corporation's application for security is granted and that security for expenses and counsel fees which "may be incurred" does not include those which have been in-

curred before one or the other of these periods. We would not, for the purpose of considering constitutionality, construe the statute in absence of a state decision as imposing liability for events before its enactment. On this basis its alleged retroactivity amounts only to a stay of further proceedings unless and until security is furnished for expense incurred in the future, and does not extend either to destruction of an existing cause of action or to creation of a new liability for past events.

The mere fact that a statute applies to a civil action retrospectively does not render it unconstitutional. *Blount* v. *Windley,* 95 U. S. 173, 180; *Western Union Telegraph Co.* v. *L. & N. R. Co.,* 258 U. S. 13; *Chase Securities Corp.* v. *Donaldson,* 325 U. S. 304. Looking upon the statute as we have indicated, its retroactive effect, if any, is certainly less drastic and prejudicial than that held not to be unconstitutional in these decisions. We do not find in the bare statute any such retroactive effect as renders it unconstitutional under the Due Process Clause, and of course we express no opinion as to the effect of an application other than we have indicated.

It is also contended that this statute may not be applied in this case because the cause of action derives from a Delaware corporation and hence Delaware law governs it. But it is the plaintiff who has brought the case in New Jersey. The trial will very likely involve questions of conflict of laws as to which the law of New Jersey will apply, *Klaxon Co.* v. *Stentor Co.,* 313 U. S. 487; *Griffin* v. *McCoach,* 313 U. S. 498, and perhaps questions of full faith and credit. These are not before us now. A plaintiff cannot avail himself of the New Jersey forum and at the same time escape the terms on which it is made available, if the law is applicable to a federal court sitting in that State, which we later consider.

We conclude, therefore, that, so far as the Federal Constitution is concerned, New Jersey's security statute is

a valid law of that State and the question remains as to whether it must be applied by federal courts in that State to suits brought therein on diversity grounds.

## Applicability in Federal Court.

The Rules of Decision Act, in effect since the First Congress of the United States and now found at 28 U. S. C. § 1652, provides: "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." This Court in *Erie R. Co.* v. *Tompkins,* 304 U. S. 64, held that judicial decisions are laws of the states within its meaning. But *Erie R. Co.* v. *Tompkins* and its progeny have wrought a more far-reaching change in the relation of state and federal courts and the application of state law in the latter whereby in diversity cases the federal court administers the state system of law in all except details related to its own conduct of business. *Guaranty Trust Co.* v. *York,* 326 U. S. 99. The only substantial argument that this New Jersey statute is not applicable here is that its provisions are mere rules of procedure rather than rules of substantive law.

Even if we were to agree that the New Jersey statute is procedural, it would not determine that it is not applicable. Rules which lawyers call procedural do not always exhaust their effect by regulating procedure. But this statute is not merely a regulation of procedure. With it or without it the main action takes the same course. However, it creates a new liability where none existed before, for it makes a stockholder who institutes a derivative action liable for the expense to which he puts the corporation and other defendants, if he does not make good his claims. Such liability is not usual and it goes beyond payment of what we know as "costs." If all

the Act did was to create this liability, it would clearly be substantive. But this new liability would be without meaning and value in many cases if it resulted in nothing but a judgment for expenses at or after the end of the case. Therefore, a procedure is prescribed by which the liability is insured by entitling the corporate defendant to a bond of indemnity before the outlay is incurred. We do not think a statute which so conditions the stockholder's action can be disregarded by the federal court as a mere procedural device.

It is urged, however, that Federal Rule of Civil Procedure No. 23 deals with plaintiff's right to maintain such an action in federal court and that therefore the subject is recognized as procedural and the federal rule alone prevails. Rule 23 requires the stockholder's complaint to be verified by oath and to show that the plaintiff was a stockholder at the time of the transaction of which he complains or that his share thereafter devolved upon him by operation of law. In other words, the federal court will not permit itself to be used to litigate a purchased grievance or become a party to speculation in wrongs done to corporations. It also requires a showing that an action is not a collusive one to confer jurisdiction and to set forth the facts showing that the plaintiff has endeavored to obtain his remedy through the corporation itself. It further provides that the class action shall not be dismissed or compromised without approval of the court, with notice to the members of the class. These provisions neither create nor exempt from liabilities, but require complete disclosure to the court and notice to the parties in interest. None conflict with the statute in question and all may be observed by a federal court, even if not applicable in state court.

We see no reason why the policy stated in *Guaranty Trust Co.* v. *York*, 326 U. S. 99, should not apply.

We hold that the New Jersey statute applies in federal courts and that the District Court erred in declining to fix the amount of indemnity reasonably to be exacted as a condition of further prosecution of the suit.

The judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE FRANKFURTER concurs, dissenting in part.

The cause of action on which this suit is brought is a derivative one. Though it belongs to the corporation, the stockholders are entitled under state law to enforce it. The measure of the cause of action is the claim which the corporation has against the alleged wrongdoers. This New Jersey statute does not add one iota to nor subtract one iota from that cause of action. It merely prescribes the method by which stockholders may enforce it. Each state has numerous regulations governing the institution of suits in its courts. They may favor the litigation or they may affect it adversely. But they do not fall under the principle of *Erie R. Co.* v. *Tompkins,* 304 U. S. 64, unless they define, qualify or delimit the cause of action or otherwise relate to it.

This New Jersey statute, like statutes governing security for costs, regulates only the procedure for instituting a particular cause of action and hence need not be applied in this diversity suit in the federal court. Rule 23 of the Federal Rules of Civil Procedure defines that procedure for the federal courts.

MR. JUSTICE RUTLEDGE, dissenting.

I am in accord with the dissenting opinion of MR. JUSTICE DOUGLAS in this case. I also agree with the dissenting views of MR. JUSTICE JACKSON in No. 465, *Woods* v.

*Interstate Realty Co., ante,* p. 538, decided today. And I have noted my dissent in No. 522, *Ragan* v. *Merchants Transfer & Warehouse Co., ante,* p. 530, also decided today.

Without undertaking to discuss each case in detail, I think the three decisions taken together demonstrate the extreme extent to which the Court is going in submitting the control of diversity litigation in the federal courts to the states rather than to Congress, where it properly belongs. This is done in the guise of applying the rule of *Erie R. Co.* v. *Tompkins,* 304 U. S. 64. But in my opinion it was never the purpose of that decision to put such matters as those involved here outside the power of Congress to regulate and to confer that authority exclusively upon the states.

What is being applied is a gloss on the *Erie* rule, not the rule itself. That case held that federal courts in diversity cases must apply state law, decisional as well as statutory, in determining matters of substantive law, in particular and apart from procedural limitations upon its assertion—whether a cause of action exists. I accept that view generally and insofar as it involves a wise rule of administration for the federal courts, though I have grave doubt that it has any solid constitutional foundation.

But the *Erie* case made no ruling that in so deciding diversity cases a federal court is "merely another court of the state in which it sits," and hence that in every situation in which the doors of state courts are closed to a suitor, so must be also those of the federal courts. Not only is this not true when the state bar is raised by a purely procedural obstacle. There is sound historical reason for believing that one of the purposes of the diversity clause was to afford a federal court remedy when, for at least some reasons of state policy, none would be available in the state courts. It is the gloss which has

been put upon the *Erie* ruling by later decisions, *e. g.,*
*Guaranty Trust Co.* v. *York,* 326 U. S. 99, which in my
opinion is being applied to extend the *Erie* ruling far
beyond its original purpose or intent and, in my judgment,
with consequences and implications seriously impairing
Congress' power, within its proper sphere of action, to
control this type of litigation in the federal courts.

The accepted dichotomy is the familiar "procedural-
substantive" one. This of course is a subject of endless
discussion, which hardly needs to be repeated here. Suf-
fice it to say that actually in many situations procedure
and substance are so interwoven that rational separation
becomes well-nigh impossible. But, even so, this fact
cannot dispense with the necessity of making a distinc-
tion. For, as the matter stands, it is Congress which
has the power to govern the procedure of the federal
courts in diversity cases, and the states which have that
power over matters clearly substantive in nature. Judges
therefore cannot escape making the division. And they
must make it where the two constituent elements are
Siamese twins as well as where they are not twins or
even blood brothers. The real question is not whether
the separation shall be made, but how it shall be made:
whether mechanically by reference to whether the state
courts' doors are open or closed, or by a consideration of
the policies which close them and their relation to ac-
commodating the policy of the *Erie* rule with Congress'
power to govern the incidents of litigation in diversity
suits.

It is in these close cases, this borderland area, that
I think we are going too far. It is one thing to decide
that Pennsylvania does or does not create a cause of
action in tort for injuries inflicted by specified conduct
and to have that determination govern the outcome of

a diversity suit in Pennsylvania or New York.[1]  It is
another, in my view, to require a bond for costs or for
payment of the opposing party's expenses and attorney's
fees in the event the claimant is unsuccessful.   Whether
or not the latter is conceived as creating a new substantive
right, it is too close to controlling the incidents of the
litigation rather than its outcome to be identified with
the former.   It is a matter which in my opinion lies
within Congress' control for diversity cases, not one for
state control or to be governed by the fact that the state
shuts the doors of its courts unless the state requirements
concerning such incidents of litigation are complied with.

In my view Rule 23 of the Federal Rules of Civil Pro-
cedure, derived from the former Equity Rules and now
having the sanction of Congress, is valid and governs
in the *Cohen* case.   If, however, the State of New Jersey
has the power to govern federal diversity suits within its

---

[1] It may be noted that the disposition of the local law problem
apparently presented in *Erie* was not consistent, either here or on
remand, with the current view that a federal district court is required
to treat a diversity case exactly as would a state court of the state
in which the district court is sitting: The *Erie* case arose out of
an alleged *Pennsylvania* tort, and this Court stated that the court
of appeals had erred when it "declined to decide the issue of state
law," 304 U. S. at 80—*i. e.*, "the Pennsylvania law." *Ibid.* But
the *Erie* case was initiated by Tompkins, "a citizen of Pennsyl-
vania . . . in the federal court *for southern New York*, which had
jurisdiction because the company is a corporation of that State."
304 U. S. at 69 (emphasis added).   Accordingly, as *Erie* is now con-
strued, the issue on remand should have been what law *a New York
state court would have applied to the Pennsylvania tort.*   But the
sole issue determined on remand was the applicable *Pennsylvania*
law, without mention of the probable attitude of the New York courts.
*Tompkins* v. *Erie R. Co.*, 98 F. 2d 49.   It was not until after Justice
Brandeis had retired that this Court held that federal district courts
were required to follow local conflict of laws doctrine in the resolution
of diversity cases.   *Klaxon Co.* v. *Stentor Co.*, 313 U. S. 487.

borders as to all matters having a substantive tinge or aspect, then it may be questioned whether, in the event of conflict with some local policy, a federal court sitting in that state could give effect to the Rule's requirement that the complaint aver "that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law . . . ." For in any strict and abstract sense that provision would seem to be as much a "substantive" one as the New Jersey requirements for bond, etc. And, if so, then it would seem highly doubtful, on any automatic or mechanical application of the substantive-procedural dichotomy, that either Congress or this Court could create such a limitation on diversity litigation, since as a substantive matter this would be for the states to control. See 3 Moore, Federal Practice (2d ed., 1948) 3493–3506.

For myself I have no doubt of the validity of Rule 23 or of the power of Congress to enact such a rule, even though it has a substantive aspect. Notwithstanding that aspect, the rule is too closely related to procedural and other matters affecting litigation in the federal courts for me to conceive of its invalidity. So also in the present cases I think the state regulations, though each may be regarded as having a substantive aspect, are too closely related to the modes and methods of conducting litigation in the federal courts to be capable of displacing Congress' power of regulation in those respects or the federal courts' power to hear and determine the respective controversies.

Accordingly I would reverse the judgments in the *Cohen* and *Ragan* cases and affirm that in the *Woods* case.