Wallace G. **WEST** and Claudia M. West,
Plaintiffs-Appellees,

v.

Charles S. **ZURHORST** and Susan M.
Zurhorst, Defendants-Appellants.

No. 520, Docket 34261.

United States Court of Appeals,
Second Circuit.

Argued Feb. 10, 1970.

Decided Feb. 26, 1970.

See also D.C., 280 F.Supp. 574.

John A. Kiser, New York City, for
plaintiffs-appellees.

Monroe J. Cahn, New York City, for
defendants-appellants.

Before LUMBARD, Chief Judge, and
FRIENDLY and FEINBERG, Circuit
Judges.

FRIENDLY, Circuit Judge:

Wallace and Claudia West, citizens of
New Jersey, sued Charles and Susan
Zurhorst, then citizens of New York,
in the District Court for the Southern
District of New York in July, 1966.
They sought to recover damages of
$19,100 allegedly sustained in the pur-
chase of stock of and the loan of moneys
to a corporation promoted by the defend-
ants, rather appropriately named Lost
Village Operations, Inc. The first count
of the complaint alleged common-law
fraud; the second relied on § 10 of the
Securities and Exchange Act of 1934 and
the SEC's Rule 10b–5. On the day the
complaint was filed, plaintiffs obtained
an *ex parte* order of attachment against
land owned by the defendants pursuant
to F.R.Civ.P. 64, which provides that
"at the commencement of and during
the course of an action, all remedies
providing for seizure of person or prop-
erty for the purpose of securing satis-
faction of the judgment ultimately to be
entered in the action are available under
the circumstances and in the manner
provided by the law of the state in which
the district court is held," and New York
CPLR § 6201, subd. 7 authorizing at-
tachment when "there is a cause of ac-
tion to recover damages * * * for
fraud or deceit." Later the defendants
were personally served.

In pre-trial proceedings several years
afterwards plaintiffs announced they
would abandon the first count and rely
solely on the claim under Rule 10b–5. De-
fendants promptly made a motion to va-
cate the attachment. Judge Tyler denied
this, holding that an action under Rule
10b–5 was within the New York attach-
ment statute.[1] Defendants moved for

1. The judge cited A. T. Brod & Co. v. Per-
low, 375 F.2d 393, 398 n. 6 (1967), for
the proposition that "the courts in this
circuit, have permitted attachments in
Section 10(b) actions." The statement is
literally correct, but the issue argued and
decided in *Brod* was whether the com-
plaint stated a claim on which relief could
be granted and not whether the claim
qualified under CPLR § 6201, subd. 7.

reargument on the basis of Judge Herlands' opinion in Reeder v. Mastercraft Electronics Corp., 297 F.Supp. 815 (S.D. N.Y.1969), holding that attachment under CPLR § 6201, subd. 7 is available in a Rule 10b–5 case only when the facts averred in the moving affidavit would also support a common-law fraud action. The court granted reargument but adhered to its decision on the basis that the moving affidavit and the repeating and realleging of the allegations of the fraud count in the Rule 10b–5 count satisfied the *Reeder* test. This appeal followed.

Defendants contend that the order is appealable as a final decision, 28 U.S.C. § 1291, under the doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–1226, 93 L.Ed. 1528 (1949). They argue that their right to be free from an allegedly unlawful attachment falls "in that small class [of decisions] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Referring to Mr. Justice Jackson's explanation that when the time for terminating the action should come, "it will be too late effectively to review the present order and the rights conferred by the statute, if it is applicable, will have been lost, probably irretrievably," they say this fits them like a glove, with the exception, claimed to be immaterial, cf. Fielding v. Allen, 181 F.2d 163 (2 Cir.), *cert. denied* Ogden Corp. v. Fielding, 340 U.S. 817, 71 S.Ct. 46, 95 L.Ed. 600 (1950), that they are asserting a right to freedom from the burden of the state statute rather than to a benefit conferred by it.

The argument has its persuasiveness. Maintenance of a lien upon property is not a negligible deprivation, cf. Sniadach v. Family Finance Corp., 395 U.S. 337, 342, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (concurring opinion of Mr. Justice Harlan), and the damages could exceed the $1500 provided by the attachment bond. The importance of being freed from the burden of a provisional remedy would be even plainer if the Wests had availed themselves of arrest, also allowable against a male defendant in a New York action for "fraud or deceit," CPLR § 6101, subd. 1, especially if the defendant was unable to make bail. But see Crooker v. Knudsen, 232 F. 857 (9 Cir. 1916). But similar arguments could be made with respect to other provisional remedies the grant or withholding of which Congress evidently thought not to be appealable without special legislation. The grant of an interlocutory injunction can cause damage not recoverable under the bond, either because the bond proves to be too small, see Russell v. Farley, 105 U.S. 433, 437–447, 26 L.Ed. 1060 (1881); Lawrence v. St. Louis-S. F. Ry., 278 U.S. 228, 233, 49 S.Ct. 106, 73 L.Ed. 282 (1929), or because the damage is not measurable in money. Yet the framers of the Act of March 3, 1891, creating the courts of appeals and giving them jurisdiction to review "final decisions," thought it necessary to provide additionally for review of orders granting such injunctions, 26 Stat. 828.[2] Even more closely analogous to and indeed more drastic than an attachment is an order placing a defendant's property under the control of a receiver. But Congress also felt it necessary to provide specifically for appellate jurisdiction over orders appointing receivers or refusing to wind up receiverships. See 31 Stat. 660 (1900), 43 Stat. 937 (1925), and Frankfurter & Landis, The Business of the Supreme Court, 39 Harv.L. Rev. 325, 348–49 (1926).

It could be said against this that the Congresses that took these actions did not have the benefit of *Cohen's* elucidation of "final decision"; indeed the

---

2. Jurisdiction to review denials or dissolutions of temporary injunctions was conferred four years later. 28 Stat. 666 (1895).

case made by the American Bar Association Committee of Judicial Administration for a statute to allow an appeal from an order appointing a receiver is only a more vigorous precursor of Mr. Justice Jackson's language a half century later.[3] But any such argument must shatter on the rock that, in what we believe to be the Supreme Court's only post-*Cohen* pronouncement with respect to the appealability of orders of attachment, Mr. Justice Frankfurter said that while an order vacating an attachment that afforded the sole basis for jurisdiction was appealable,[4] "the situation is quite different where an attachment is upheld pending determination of the principal claim," citing Cushing v. Laird, 107 U.S. 69, 2 S.Ct. 196, 27 L.Ed. 391 (1883). Swift & Co. Packers v. Compania Colombiana del Caribe, S.A., 339 U.S. 684, 689, 70 S.Ct. 861, 94 L.Ed. 1206 (1950). Relying on the holding in *Cushing* and the dictum in *Swift*, this court has dismissed an appeal from an order refusing to vacate an attachment even in a case, stronger for appealability than this one, where an intervenor claimed the attached property was its rather than the defendant's. Flegenheimer v. General Mills, Inc., 191 F.2d 237 (2 Cir. 1951). See also American Mortgage Corp. v. First Nat'l Mortgage Co., 345 F.2d 527 (7 Cir. 1955). The increase in the burden on the courts of appeals in the last decade, with nearly three times as many appeals in 1969 as in 1960, see Administrative Office of the United States Courts, Annual Report of the Director, 1969, Table II–4, hardly suggest the desirability of an expansive reading of *Cohen*, even if controlling decisions left us freer in that respect than we think. While the grievance created by an improper attachment *pendente lite* is "important," 337 U.S. at 546, 69 S.Ct. 1221, it is not important enough to make the decision "final."[5]

Appeal dismissed for want of jurisdiction.

3. "The appeal from a final decree where there has been a previous interlocutory decree appointing a receiver, with intermediate orders for the sale of the res or receivers' certificates or, in any event, with the entire expenses of the receivership saddled on the estate, is like the justice that grants a new trial to the beheaded criminal." 17 Am.Bar Ass'n Rep. 341 (1894), quoted in Frankfurter & Landis, *supra*, 39 Harv.L.Rev. at 347.

4. As indicated by Judge L. Hand in Flegenheimer v. General Mills, Inc., 191 F.2d 237, 240 (2 Cir. 1951), it is hard to see why this was not a final decision altogether apart from *Cohen*, on which the Court relied.

5. Although this case may be atypical in some respects, it illustrates how unimportant the issue may be. The Zurhorsts have moved to Connecticut and an attachment would now be authorized on the ground of non-residence, CPLR § 6201, subd. 1. Under New York procedure, defendants may free their property of the lien by giving bond in the same amount, CPLR § 6222; indeed after appearance by defendants, the court is directed by CPLR § 6223 to vacate the attachment if it determines that it is unnecessary to the security of the plaintiffs. And the action is scheduled for early trial.