**BRASTEX CORPORATION,**
**Plaintiff-Appellant,**

v.

**ALLEN INTERNATIONAL, INC.,**
**Defendant-Appellee.**

**No. 578, Docket 82–7697.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 5, 1982.

Decided March 2, 1983.

James M. Brachman, New York City (Freeman, Wasserman & Schneider, New York City, Barbara E. Olk, New York City, of counsel), for plaintiff-appellant.

Alfred R. Fabricant, New York City (Shea & Gould, New York City), for defendant-appellee.

Before TIMBERS, KEARSE and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York, John E. Sprizzo, *Judge,* entered on September 20, 1982, denying appellant's motion to confirm an *ex parte* order of attachment issued by that court on April 2, 1982, and to extend the validity of the levies made pursuant thereto.[1]

The plaintiff-appellant, Brastex Corporation (Brastex), a Delaware corporation with its principal place of business in New York, is engaged in the wholesale towel business. The defendant-appellee, Allen International, Inc. (Allen), an Arizona corporation currently licensed to do business in New York,[2] is a customer of Brastex. The present litigation began when Brastex filed a complaint on March 26, 1982, against Allen, for, *inter alia,* damages incurred by Allen's failure to render payment for towels sold and delivered to Allen by Brastex.[3] To secure payment of an anticipated judgment, Brastex applied for an *ex parte* pre-judgment order of attachment in the amount of $86,093.07. The order was issued by Judge John E. Sprizzo of the United States District Court for the Southern District of New York on April 2, pursuant to Rule 64 of the Federal Rules of Civil Procedure[4]

---

1. The September 20 order provided that such levies be valid until September 24, 1982.

2. Allen became licensed to do business in New York on September 1, 1982, after the April 2 order of attachment was issued, but before the confirmation hearing. The timing of Allen's New York licensing is central to the principal question on appeal. *See* discussion of CPLR § 6201(1) in text *infra.*

3. Brastex asserted five claims, alleging: (1) Allen's debt to Brastex of $88,625.85 for goods sold and delivered by Brastex to Allen or to customers of Allen between October 1, 1980 and October 31, 1981; (2) Allen's failure to pay warehousing and freight costs, in the amount of at least $15,000, for delivery of certain towels by Brastex to Allen customers, *per* a May, 1981 agreement; (3) repudiation by Allen of an agreement to purchase from Brastex a quantity of specially designed towels for $32,776.45; (4) warehouse, broker's and trucker's charges of at least $50,000 due to Allen's wrongful repudiation; and (5) declaration of no copyright infringement by Brastex, if Brastex sells the specially designed towels to non-parties to this action.

4. Fed.R.Civ.P. 64 reads, in pertinent part:

   At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the

and section 6201 of the Civil Practice Law and Rules of the State of New York (CPLR), which reads, in pertinent part:

§ 6201. Grounds for attachment

An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when:

1. the defendant is a nondomiciliary residing without the state, *or is a foreign corporation not qualified to do business in the state;* or

\* \* \* \* \* \*

3. the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts . . . .

N.Y. CPLR § 6201(1), (3) (McKinney 1980) (emphasis added). The district court found the plaintiff entitled to the order of attachment under section 6201(1) because the defendant, Allen International, Inc., was a foreign corporation not qualified to do business in the State of New York.

Pursuant to the order of attachment, Brastex filed an undertaking and, on April 20, timely moved to confirm the order filed on April 2. While the motion to confirm was pending, the United States Marshal for the Southern District of New York levied on two Allen customers—R.H. Macy's & Co. and Bloomingdale Brothers Corp.—on April 26 and 29, respectively. On September 15, oral argument was held in the district court on Brastex's motion to confirm. At that time, attorneys for Allen submitted confir-

mation from the Secretary of State of New York that Allen had qualified, on September 1, 1982, to do business in New York State under the name of Allen Textiles, Inc. In view of these changed circumstances, the court denied Brastex's motion to confirm the attachment and extend the levies, noting:

> We all know the Supreme Court has indicated in recent years this is a drastic remedy and one not lightly to be given. The legislature of the State of New York has narrowed the grounds since 1977 with respect to when an attachment against a foreign corporation may be granted and has specifically by its action said you can't get it in every case against a foreign corporation. The only time you can is if they are not licensed to do business then, but now they are. In the absence of some controlling authority from the State Court I must make my own decision, and I think it would be inconsistent with the legislative intent under Subdivision 1 for this Court to continue an attachment and to extend the levies when the statutory basis of Subdivision 1 no longer exists.

Tr. 23–24.[5] The district judge also rejected Brastex's argument that subsection 3 was applicable, stating that section 6201(3) "requires a separate and independent finding of fraud."[6] Tr. 15.

On appeal, the parties assert two principal claims. First, as a threshold issue, appellee Allen contends that this Court lacks jurisdiction to review an order granting or denying a provisional remedy which is not a final order. Second, appellant Brastex asserts that section 6201(1) should not apply to dissolve the pre-judgment attachment in this case. It contends that it could not have

purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held . . .

**5.** References are to the transcript of the September 15, 1982 hearing on plaintiff-appellant's motion to confirm.

**6.** The district court extended the levies until September 24, 1982, for the purpose of allowing Brastex to seek relief from this Court. The levies were extended until September 28, 1982, by stipulation of the parties. Plaintiff-appellant then moved for a stay of the district court order and continuation of the validity of the order of attachment and levies pending appeal. The motion was granted on September 28, 1982.

been the intent of the New York State legislature to allow a corporation to avoid a previously valid attachment order simply by taking the administrative steps to qualify to do business within New York State. We reject both claims.

### Jurisdiction

■ Appellee asserts that the district court's order denying a motion to confirm an attachment is neither an appealable order within the meaning of 28 U.S.C. § 1291 (final orders) or § 1292(a)(1) (interlocutory orders), nor within the "collateral order" exception set forth in *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). Because we find that the order falls within the *Cohen* exception, we decline to dismiss the appeal on this basis.

In *Cohen,* the United States Supreme Court recognized that in some circumstances, an otherwise nonappealable order might, in the court's discretion, be appealed if the order comes within

> that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.

*Id.* at 546, 69 S.Ct. at 1225–26. In *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,* 339 U.S. 684, 688–89, 70 S.Ct. 861, 864–65, 94 L.Ed. 1206 (1950), the Court held an order vacating an attachment appealable as a collateral order. *See general-*

ly 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 110.13[5], at 170–73 (2d ed. 1982); 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3911, at 491–94 (1976). In *Swift,* the attachment was issued "in order to secure respondents' appearance and to insure the fruits of a decree in libellants' favor." 339 U.S. at 691, 70 S.Ct. at 866.

Appellee appears to contend that because Brastex, unlike Swift, does not rely on the attachment as the basis for jurisdiction, the district court's order in the instant case does not rise to the level of urgency or importance envisioned by the Supreme Court in *Cohen.* We disagree. First, we note that in *Swift,* the attachment served two purposes: jurisdiction and security for a potential judgment.[7] Second, jurisdictional purpose is not the only circumstance in which this Court has reviewed an order vacating an attachment. In *Republic of Italy v. DeAngelis,* 206 F.2d 121 (2d Cir. 1953), for example, the plaintiff had obtained a pre-judgment attachment on the grounds that the defendant had assigned, disposed of, or secreted its property with intent to defraud its creditors and that it had fraudulently incurred obligations and made fraudulent transfers. *Id.* at 123. The district court vacated the attachment and the plaintiff appealed. *Id.* This Court found the order appealable under *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,* 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950). *Id.* Thus, there appears to be no prohibition on review of an order vacating an attachment in cases where jurisdiction over defendant is not in issue.[8] In

---

7. In *Swift,* the defendant had, in fact, entered an appearance at the Court of Appeals level. *Swift & Co. Packers v. Compania Colombiana del Caribe, S.A.,* 175 F.2d 513, 516 (5th Cir. 1949). Thus, the sole remaining purpose of the attachment, which the Court of Appeals vacated, was security for the judgment. *Id.*

8. The Second Circuit has distinguished cases where an attachment has been denied from those where an attachment has been granted or continued. *Compare Maryland Tuna Corp. v. MS Benares,* 429 F.2d 307, 317 n. 6 (2d Cir. 1970) (order vacating an attachment appealable), *and Republic of Italy v. DeAngelis,* 206 F.2d 121, 123 (2d Cir.1953) (same), *with W.T.*

Grant & Co. v. Haines, 531 F.2d 671 (2d Cir. 1976) (order granting or continuing attachment not appealable), *and West v. Zurhorst,* 425 F.2d 919, 921 (2d Cir.1970) (order refusing to vacate attachment not appealable).

Appellee asserts that *West v. Zurhorst,* 425 F.2d 919 (2d Cir.1970), would dictate that we not entertain this appeal. In that case, appellee notes, the court pointed out:

> Mr. Justice Frankfurter said that while an order vacating an attachment that afforded the sole basis for jurisdiction was appealable, "the situation is quite different where an attachment is upheld pending determination of the principal claim," . . .

the instant case, appellant presents a serious question of first impression concerning CPLR § 6201(1). Since we find this issue "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated," *Cohen v. Beneficial Loan Corp.,* 337 U.S. at 546, 69 S.Ct. at 1226, we reach the merits of appellant's claim.

### Post-Attachment Qualification under CPLR section 6201(1)

■ We are presented with the question of whether a post-attachment, pre-confirmation, qualification to do business in New York under CPLR § 6201(1) can serve to void a previously valid attachment issued under that provision. Because this question is one of substantive law, as a federal court sitting in diversity we must apply the law of New York State. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Where the law of the state is unclear or non-existent as to the matter in controversy, however, the court must determine what result the state court would reach if the case had been brought in state court. *See Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 209, 76 S.Ct. 273, 279, 100 L.Ed. 199 (1956) (Frankfurter, J., concurring); *Gordon v. Motel City "B" Associates,* 403 F.2d 90, 92 (2d Cir.1968); *Cooper v. American Airlines,* 149 F.2d 355, 359 (2d Cir.1945). Because we have found no New York case which has resolved the question of whether a post-attachment, pre-confirmation, qualification to do business removes the statutory ground for an existing attachment under CPLR § 6201(1), our task is to rule as we might expect a New York State court to rule on the issue.

New York CPLR § 6201(1) allows attachment against a defendant who "is a foreign corporation not qualified to do business in the state." Appellant urges that this provision should be read to exempt property of foreign corporations from attachment only when such corporations have qualified to do business in New York in the normal course of business. Br. for Appellant at 10. In the alternative, it urges that CPLR § 6201(3), the fraudulent conduct provision, be invoked to preserve the attachment in this case because Allen's tardy qualification was intended to frustrate the enforcement of Brastex's judgment. We reject appellant's claims.

As to appellant's suggested interpretation of CPLR § 6201(1), we find nothing either in the language of the statute or in the legislative history to suggest an intent to require qualification "in the normal course of business." First, the language of the statute itself, "qualified to do business in the state," denotes the formal act of filing to do so. We recognize that a strict interpretation of this provision, in some cases, might allow a defendant to defeat an otherwise valid attachment by filing papers. Yet the legislature chose the term "qualified," without setting forth the limitation suggested by appellant, or any other limitation. In this sense, the statute is unambiguous. Applying principles of statutory construction, our inquiry might end here. *See Zaldin v. Concord Hotel,* 48 N.Y.2d 107, 421 N.Y.S.2d 858, 861–62, 397 N.E.2d 370, 373 (1979) ("[W]hen ... a statute is free from ambiguity and its sweep unburdened by qualification or exception, we must do no more and no less than apply the language as it is written.") (citations omitted); *see also People ex rel. New York Cent. & Hudson Riv. R.R. Co. v. Woodbury,* 208 N.Y. 421, 424–25, 102 N.E. 565, 566 (1913); *McKinney's Statutes* § 76 (1971); 2A C.

*Id.* at 921 (construing *Swift & Co. Packers v. Colombiana del Caribe, S.A.,* 339 U.S. 684, 689, 70 S.Ct. 861, 865, 94 L.Ed. 1206 (1950)). While we do not dispute the propriety of this statement by Judge Friendly in *West v. Zurherst,* we find that that case does not dictate the result appellee wishes us to reach. In *West,* the Court declined to review an order refusing to vacate an attachment. The instant case presents the converse—the district court vacated the attachment. We find such an order reviewable by this Court. *See Republic of Italy v. DeAngelis,* 206 F.2d 121, 123 (2d Cir.1953).

Sands, *Sutherland's Statutes and Statutory Construction* §§ 46.01, 46.04 (4th ed. 1973).[9]

■ Appellant asserts, however, that such a literal reading of CPLR § 6201(1) would render it meaningless. He argues that a defendant against whom an order of attachment has been issued could simply qualify to do business in order to defeat the attachment, and then withdraw its qualification and remove its assets from the State once that goal had been accomplished. He points out that under New York law, a statute should not be read so as to render it ineffective: "[I]f a literal interpretation of an enactment tends to abrogate it, the courts will place a more liberal meaning on the language used. If possible, such a construction will be placed on an act as will not suffer it to be eluded . . . ." *McKinney's Statutes* § 144 (1971); *see also Wilson v. Board of Education*, 39 A.D.2d 965, 967, 333 N.Y.S.2d 868, 871–72 (2d Dep't 1972), *aff'd*, 32 N.Y.2d 636, 342 N.Y.S.2d 659, 295 N.E.2d 387 (1973). A rational construction, appellant continues, would read section 6201(1) in conjunction with section 6201(3). Subsection 3 allows attachment where "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts; . . ." While we may agree that "the language about frustrating the enforcement of a judgment . . . was added by the Legislature, apparently to make it easier for the plaintiff to obtain an order of attachment," McLaughlin, Practice Commentaries C6201:4, N.Y. CPLR § 6201 (McKinney 1980), we would consider it an unwarranted leap of logic to find subsection 3 applicable to the facts of this case. In his ruling below, the district judge pointed out that subsection 3 "requires a separate and independent finding of fraud," Tr. 15, and found that "there really are no facts which meet the rather stringent requirements of Section 6201 Subdivision 3." Tr. 26. We find no reason to disagree. Indeed, under section 6201(3) "it is incumbent upon [the plaintiff] to demonstrate that the defendant is acting with intent to defraud. Fraud is not lightly inferred, and the moving papers must contain evidentiary facts—as opposed to conclusions—proving the fraud." McLaughlin, Practice Commentaries C6201:4, N.Y. CPLR § 6201 (McKinney 1980). Appellant offered as grounds for application of subsection 3 that, contrary to an agreement between the parties, Allen paid certain out-of-state customers directly rather than paying Brastex on certain accounts,[10] and that Allen is in shaky financial condition, thereby threatening the prospect of collecting a judgment. Tr. 16–22. The district judge rejected these claims, stating:

> I find that the provisions of Subdivision 3 are designed to deal with the removal or fraudulent attempted removal of assets within the State of New York, and the statute does not apply in a situation where the assets were never within the State of New York.

> I further find that the argument that I should grant an attachment on the theory that the Allen Corporation may be in shaky financial condition and at the time of judgment may not be able to respond to a judgment is not a statutory basis for

---

9. Appellant appears to regard the act of qualifying to do business as a formalistic exercise which does not assure that there are assets in the State, and suggests that pre-confirmation qualification could serve to allow foreign corporations to defeat valid attachments at will. The result that appellant fears—*i.e.*, at-will dissolution of valid attachments—is a consideration for the legislature, and since, in our view, the statute speaks clearly with respect to the requirements for attachment against foreign corporations, it is not unreasonable to assume that such a possibility was taken into account.

10. In its reply to Allen's opposition to Brastex's motion to confirm, Brastex alleged, *inter alia*, that, to resolve Allen's existing and imminent indebtedness to Brastex, in May of 1981 the parties agreed that Brastex would bill Allen customers directly, using its own invoices. Reply Affidavit of Margaret Schreiber, Vice-President and Controller of Brastex Corporation, dated May 27, 1982.

an attachment set forth in 6201, and that if the Legislature of the State of New York had intended that we could issue attachments in such cases against foreign and/or domestic corporations on the ground of their potential bankruptcy—assuming that were true, which is denied—then I believe they would have set it forth in the statute, and I can't rewrite the statute for them.

Tr. 24–25. We consider this reading of the statute consistent with applicable principles of statutory interpretation and find that the district judge's factual findings relating to subsection 3 were not clearly erroneous.

▮ Nor do we agree with appellant that our strict reading of section 6201(1) "would completely undercut one of the essential purposes of attachment [*i.e.*, security for collection of judgment] and be contrary to a proper reading of the statute." Br. for Appellant at 10. CPLR §§ 6211(b) and 6223(b) require that on a motion to confirm an order of attachment, the plaintiff has the burden of establishing a ground for attachment. The district judge acknowledged this requirement at the hearing on the motion to confirm:

[addressing appellant]: I don't agree with your argument that I must ignore the changed circumstances where the changed circumstances obviate the basis for the attachment under Subdivision 1 of Section 6201. They have filed an authenticated license to do business in the State of New York. Had the motions been brought at a time when they were already licensed it is clear you would have had no basis for an attachment. I don't think I can blind myself to the facts as they now exist on a motion to confirm the attachment and to extend the levies, and I don't think the legislature of the State of New York contemplated that when the grounds for attachment no longer exist, even if they existed at the time of the attachment, the Court is justified in extending the rather extraordinary remedy of attachment.

Tr. 23. It is significant that the New York State legislature, in 1977, acted to narrow the grounds for this "extraordinary remedy" as to foreign corporations by allowing attachment only if the corporation was not licensed to do business in New York. Prior to 1977, attachment could be had against any foreign corporation, regardless of whether it was licensed to do business in New York. This history would tend to support a narrow reading of the provision, rather than the broader reading suggested by appellant. In addition, since attachment is an extraordinary remedy created by statute in derogation of common law, the provision should be strictly construed in favor of those against whom it is employed. *Siegel v. Northern Boulevard & 80th St. Corp.*, 31 A.D.2d 182, 183, 295 N.Y.S.2d 804, 806 (1st Dep't 1968). We agree with the district judge that the statutory purpose at issue in this case—security for a judgment—is not "completely undercut" by our strict reading of the statute.[11] As the district judge noted, Tr. 25, Allen has three major customers in New York.[12] It is quite unlikely that the company will abandon these customers; rather, it is likely that they will continue to do business in New York and thereby generate assets here. Furthermore, were we to read the statute as appellant suggests, in each case a court would have to make a complex factual determination as to whether a foreign corporation has qualified "in the normal course of business" or for the purpose of avoiding a valid attachment. It is our view that this type of judicial exercise is what the legislature sought to avoid by narrowing the statute in 1977 to apply to non-qualifying businesses. Consequently, we decline to accept appellant's proposed construction.

Accordingly, we affirm the district court's order vacating the attachment and discontinuing the levies pursuant thereto.

---

**11.** Appellee has conceded personal jurisdiction.

**12.** These customers are R.H. Macy & Co., Bloomingdale Brothers Corp., and Abraham & Straus.