Justice Thomas,
concurring in part and concurring in the judgment.
I concur in the judgment and in Part II-C of the Court’s opinion because I wholeheartedly agree that “Congress’s designation of the rulemaking process as the way to define or refine when a district court ruling is ‘final’ and when an interlocutory order is appealable warrants the Judiciary’s *115 full respect.” Swint v. Chambers County Comm’n, 514 U. S. 35, 48 (1995); ante, at 114 (quoting Swint, supra; citing Cunningham v. Hamilton County, 527 U. S. 198, 210 (1999)). It is for that reason that I do not join the remainder of the Court’s analysis.
The scope of federal appellate jurisdiction is a matter the Constitution expressly commits to Congress, see Art. I, § 8, cl. 9, and that Congress has addressed not only in 28 U. S. C. §§ 1291 and 1292, but also in the Rules Enabling Act amendments to which the Court refers. See ante, at 113-114 (citing §§2072-2073). The Court recognizes that these amendments “designat[e] rulemaking, ‘not expansion by court decision,’ as the preferred means for determining whether and when prejudgment orders should be immediately appealable.” Ante, at 113 (quoting Swint, supra, at 48). Because that designation is entitled to our full respect, and because the privilege order here is not on all fours with orders we previously have held to be appealable under the collateral order doctrine, see Cohen v. Beneficial Industrial Loan Corp., 337 U. S. 541 (1949), I would affirm the Eleventh Circuit’s judgment on the ground that any “avenue for immediate appeal” beyond the three avenues addressed in the Court’s opinion must be left to the “rulemaking process.” Ante, at 114; see ante, at 110-113 (discussing certification under 28 U. S. C. § 1292(b), petitions for mandamus, and appeals from contempt orders).
We need not, and in my view should not, further justify our holding by applying the Cohen doctrine, which prompted the rulemaking amendments in the first place. In taking this path, the Court needlessly perpetuates a judicial policy that we for many years have criticized and struggled to limit. See, e. g., Ashcroft v. Iqbal, 556 U. S. 662, 671-675 (2009); Will v. Hallock, 546 U. S. 345, 349 (2006); Sell v. United States, 539 U. S. 166, 177 (2003); Cunningham, supra, at 210; Digital Equipment Corp. v. Desktop Direct, Inc., 511 U. S. 863, 884 (1994); Swint, supra, at 48; Lauro Lines s.r.l. v. *116 Chasser, 490 U. S. 495, 498-501 (1989); Van Cauwenberghe v. Biard, 486 U. S. 517, 527 (1988). The Court’s choice of analysis is the more ironic because applying Cohen to the facts of this case requires the Court to reach conclusions on, and thus potentially prejudice, the very matters it says would benefit from “the collective experience of bench and bar” and the “opportunity for full airing” that rulemaking provides. Ante, at 114.
“Finality as a condition of review is an historic characteristic of federal appellate procedure” that was incorporated in the first Judiciary Act and that Congress itself has “departed from only when observance of it would practically defeat the right to any review at all.” Cobbledick v. United States, 309 U. S. 323, 324-325 (1940). Until 1949, this Court’s view of the appellate jurisdiction statute reflected this principle and the statute’s text. See, e.g., Catlin v. United States, 324 U. S. 229, 233 (1945) (holding that § 128 of the Judicial Code (now 28 U. S. C. § 1291) limits review to decisions that “en[d] the litigation on the merits and leav[e] nothing for the court to do but execute the judgment”). Cohen changed all that when it announced that a “small class” of collateral orders that do not meet the statutory definition of finality nonetheless may be immediately appealable if they satisfy certain criteria that show they are “too important to be denied review.” 337 U. S., at 546.
Cohen and the early decisions applying it allowed § 1291 appeals of interlocutory orders concerning the posting of a bond, see id., at 545-547, the attachment of a vessel in admiralty, see Swift & Co. Packers v. Compania Colombiana Del Caribe, S. A., 339 U. S. 684, 688-689 (1950), and the imposition of notice costs in a class action, see Eisen v. Carlisle & Jacquelin, 417 U. S. 156, 170-172 (1974). As the Court’s opinion notes, later decisions sought to narrow Cohen lest its exception to § 1291 “ ‘swallow’ ” the final judgment rule. Ante, at 106 (quoting Digital Equipment, supra, at 868); see generally Coopers & Lybrand v. Livesay, 437 U. S. 463, 467- *117 468 (1978). The Court has adhered to that narrowing approach, principally by raising the bar on what types of interests are “important enough” to justify collateral order appeals. See, e. g., Will, supra, at 352-353 (explaining that an interlocutory order typically will be “important” enough to justify Cohen review only where “some particular value of a high order,” such as “honoring the separation of powers, preserving the efficiency of government . . . , [or] respecting a State’s dignitary interests,” is “marshaled in support of the interest in avoiding trial” and the Court determines that denying review would “imperil” that interest); Digital Equipment, supra, at 878-879 (noting that appealability under Cohen turns on a “judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement,” and that an interest “qualifies as ‘important’ in Cohen’s sense” if it is “weightier than the societal interests advanced by the ordinary operation of final judgment principles”). As we recognized last Term, however, our attempts to contain the Cohen doetrine have not all been successful or persuasive. See Ashcroft, supra, at 672 (“As a general matter, the collateral-order doctrine may have expanded beyond the limits dictated by its internal logic and the strict application of the criteria set out in Cohen”). In my view, this case presents an opportunity to improve our approach.
The privilege interest at issue here is undoubtedly important, both in its own right and when compared to some of the interests (e. g., in bond and notice-cost rulings) we have held to be appealable under Cohen. Accordingly, the Court’s Cohen analysis does not rest on the privilege order’s relative unimportance, but instead on its effective reviewability after final judgment. Ante, at 108-113. Although I agree with the Court’s ultimate conclusion, I see two difficulties with this approach. First, the Court emphasizes that the alternative avenues of review it discusses (which did not prove adequate in this case) would be adequate where the privilege *118 ruling at issue is “particularly injurious or novel.” Ante, at 110. If that is right, and it seems to me that it is, then the opinion raises the question why such avenues were not also adequate to address the orders whose unusual importance or particularly injurious nature we have held justified immediate appeal under Cohen. See, e. g., Sell, 539 U. S., at 177. Second, the facts of this particular case seem in several respects to undercut the Court’s conclusion that the benefits of collateral order review “cannot justify the likely institutional costs.” Ante, at 112.* The Court responds that these case-specific arguments miss the point because the focus of the Cohen analysis is whether the “entire category” or “class of claims” at issue merits appellate review under the collateral order doctrine. Ante, at 107 (internal quotation marks omitted). That is exactly right, and illustrates what increasingly has bothered me about making this kind of appealability determination via case-by-case adjudication. The exercise forces the reviewing court to subordinate the realities of each case before it to generalized conclusions about the “likely” costs and benefits of allowing an exception to the final judgment rule in an entire “class of cases.” The Court concedes that Congress, which holds the constitutional reins in this area, has determined that such value judgments *119 are better left to the “collective experience of bench and bar” and the “opportunity for full airing” that rulemaking provides. Ante, at 114. This determination is entitled to our full respect, in deed as well as in word. Accordingly, I would leave the value judgments the Court makes in its opinion to the rulemaking process, and in so doing take this opportunity to limit — effectively, predictably, and in a way we should have done long ago — the doctrine that, with a sweep of the Court’s pen, subordinated what the appellate jurisdiction statute says to what the Court thinks is a good idea.

The Court concludes, for example, that in most cases final judgment review of an erroneous privilege ruling will suffice to vindicate the injured party’s rights because the appellate court can vacate the adverse judgment and remand for a new trial in which the protected material is excluded. Ante, at 109. But this ease appears to involve one of the (perhaps rare) situations in which final judgment review might not be sufficient because it is a case in which the challenged order already has had “implications beyond the case at hand,” namely, in the separate class action in Williams v. Mohawk Indus., Inc., No. 4:04-CV-00003-HLM (ND Ga.). Ante, at 112. The Court also concludes that the “likely institutional costs” of allowing collateral order review would outweigh its benefits because, inter alia, such review would "needlessly burden the courts of appeals.” Ibid. But as the Court concedes, it must speculate on this point because the three Circuits that allow Cohen appeals of privilege rulings have not been overwhelmed. See ante, at 113.