In re TWENVER, INC., Debtor.

TWENVER, INC., Appellant,

v.

MCA TELEVISION, LTD., et al., Appellees.

Civ. A. No. 91–K–626.

United States District Court,
D. Colorado.

May 9, 1991.

Stephen W. Seifert, Caroline C. Fuller, Thomas M. Pierce, Denver, Colo., for Official Committee of Unsecured Creditors.

Thomas C. Seawell, Arnold & Porter, Denver, Colo., for MCA & Twentieth Century.

Darrell G. Waas, Michael Westover, Otten, Johnson, Robinson, Neff & Ragonetti, Denver, Colo., for Chrysler.

David Rulon Garfield, Davis, Graham & Stubbs, Denver, Colo., for Twenver.

Joel E. Laufer, Englewood, Colo., for Pennsylvania BancShares.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This matter is here on the motion by the Official Committee of Unsecured Creditors of Twenver, Inc. ("Committee") to dismiss this appeal for lack of jurisdiction. The Committee contends that (1) this is not an

appeal of right under 28 U.S.C. § 158(a), (2) the grounds for appeal under the collateral order doctrine are not satisfied, and (3) interlocutory appeal is not justified. The Debtor, Twenver, Inc., argues against dismissal.

## I. *Facts.*

Twenver, Inc., a Delaware corporation which operates TV station KTVD (Channel 20) in Denver, Colorado, filed for reorganization under Chapter 11 of the Bankruptcy Code on July 11, 1990. Two of Twenver's major unsecured creditors, MCA Television, Ltd. and Twentieth Century Fox Film Corporation, filed a reorganization plan and disclosure statement with the bankruptcy court on February 4, 1991. The plan proposed the sale of KTVD to Pennsylvania BancShares, Inc., which previously had executed a letter of intent to purchase the station.

On February 8, 1991, the creditors submitted a motion to the bankruptcy court for approval of the payment of a "topping fee" to Pennsylvania BancShares. As described by the Committee,

> [a] topping fee, or breakup fee, is a fee paid to an initial bidder for the assets of the Debtor if the bidder, after performing its due diligence inquiry, is outbid by a second bidder. Such a fee is a necessary and appropriate means to compensate a prospective purchaser of a Chapter 11 debtor's assets for the time and expenses of performing the "due diligence" analysis and for the risk of being a "stalking horse" in the sale of the Debtor's business." Such a bidder runs the risk of ultimately being outbid for the business by another entity which derives an unfair benefit from the due diligence performance and the commitment of the first bidder to purchase the business at a stated price.

Motion to Dismiss Appeal at 2. Before the topping fee is to be paid, Pennsylvania BancShares must meet three contingencies: (1) it must execute an enforceable contract for the purchase of the station which includes the payment of earnest money and a provision for liquidated damages, (2) it must be outbid by a competitor by $100,000

or more in the first round of bidding, and (3) it must not be the ultimate successful purchaser of the station.

Twenver objected to the motion for approval of the topping fee on February 19, 1991. After notice and a hearing, the bankruptcy court granted the motion. Its judgment was docketed on April 9, 1991 and an order setting forth its reasoning and the conditions for the payment of the topping fee was entered on April 15, 1991 (the "April 15 order"). Twenver filed its notice of appeal from this ruling on April 15, 1991.

On April 26, 1991, the Committee filed its motion to dismiss this appeal. The plan proponents, MCA Television, Ltd. and Twentieth Century Fox Film Corporation, have joined the motion. Twenver filed its response in opposition on May 6, 1991, and the motion is now ripe.

## II. *Merits.*

### A.  Appeal as of Right.

■ The Committee first argues that Twenver may not appeal the bankruptcy court's order permitting a topping fee because the April 15 order was not a final judgment. Bankruptcy appeals as of right are limited to "final judgments, orders and decrees ... of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a). "Generally, an order is final if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Adelman v. Fourth Nat'l Bank & Trust Co., N.A. (In re Durability, Inc.),* 893 F.2d 264, 265 (10th Cir.1990). In the bankruptcy context, the finality requirement applies "not in the overall case, but rather the particular adversary proceeding or discrete controversy pursued within the broader framework cast by the petition." *Id.* at 266.

The Committee contends that the April 15 order clearly is not final. First, there is no certainty that the topping fee will ever be paid to Pennsylvania BancShares. The company must first meet each of the three contingencies set forth in the April 15 order. The Committee notes that currently

there are no other potential bidders on the horizon. Further, it adds that the April 15 order did not involve the transfer of any estate property. That will occur only when Pennsylvania BancShares meets the contingencies and the court enters an express order approving the sale of the station and ordering payment of the topping fee. Then, the Committee argues, Twenver may properly appeal the topping fee issue.

Twenver responds that the court's April 15 order resolves the discrete issue of propriety of paying a topping fee; hence, the order is final. It reasons,

> [t]he events that must occur before BancShares is paid a topping fee require no further court action. If those extrajudicial actions occur, BancShares will be paid a topping fee. It is disingenuous for the Committee to argue that the Court may enter a subsequent order directing payment of the topping fee which Twenver may appeal. It was clearly the intent of the Bankruptcy Court to finally resolve the topping fee issue, which intent is demonstrated by the Court's entry of a separate Judgment. In addition, the Debtor believes that the Order may chill potential bidders now, which may effectively foreclose a revisitation of the Order.

Response to Motion to Dismiss Appeal at 3.

I think the Committee has the better argument. The court's April 15 order resolves the theoretical question whether, if Pennsylvania BancShares satisfies certain requirements, it will be entitled to the payment of a topping fee. There is no certainty that these events will transpire. Therefore, if I review the bankruptcy court's ruling, I may enter an order that has no real effect on the administration of this bankruptcy estate. *See In re American Colonial Broadcasting Corp.,* 758 F.2d 794, 801–02 (1st Cir.1985) (order authorizing special master to negotiate sale of two radio stations of the debtor was non-final; it was only a preliminary step in the sale, the sale was contingent on FCC approval, no property had yet been transferred, and the parties could appeal from the final confirmation of the sale). The better approach is to require the sale of the station and payment of the fee before hearing an appeal on this issue. *See In re 995 Fifth Ave. Assocs., L.P.,* 96 B.R. 24 (Bankr.S.D. N.Y.1989) (bankruptcy court considered propriety of "breakup fee" *after* sale of debtor's asset was consummated).

Twenver counters this reasoning by asserting that the April 15 order has an immediate effect on this case because the potential for payment of the fee chills other prospective bidders for the station. Twenver does not specifically explain how this occurs, although this is an acknowledged effect of such an arrangement. *See id.* at 28. First, it is unclear if the fee will be paid from estate funds or by the successful bidder for the station. If the fee is to come from the estate, which appears to be the case, it is hard to see how this will chill other purchasers from bidding on the station. On the other hand, if the successful bidder must pay the fee, arguably this would raise the cost of purchasing the station, thereby discouraging potential purchasers. However, even assuming that the fees are to be paid by the successful bidder, it is entirely speculative that this chilling effect will occur. *See id.* (despite potential purchaser's entitlement to a "breakup fee," bidding was not chilled). I think Twenver's argument, although creative, is insufficient to transform the April 15 order into a final order.

**B. Collateral Order Exception.**

One noted exception to the final order requirement is the collateral order doctrine set forth in *Cohen v. Beneficial Industrial Loan Corporation,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). "To qualify for this limited exception, the order must conclusively determine the disputed question ..., resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Magic Circle Energy 1981–A Drilling Program v. Lindsey (In re Magic Circle Energy Corp.),* 889 F.2d 950, 954 (10th Cir.1989). To appeal on this basis, Twenver carries the burden and must make a showing on all three elements to prevail. *Id.*

■ The same problems noted above arise when considering the collateral order doctrine. Again, Twenver's appeal appears to be premature. The April 15 order does not conclusively determine Pennsylvania BancShare's entitlement to the topping fee; several other events must occur. Moreover, Twenver has not forever lost the opportunity to challenge the court's ruling on this issue; it will have that opportunity if and when there is an actual award of a topping fee to Pennsylvania BancShares. Therefore, the elements of the collateral order doctrine are not met.

## C. Interlocutory Appeal.

■ If an appeal is not proper under § 158(a) and the collateral order doctrine does not apply, Twenver requests leave to appeal the April 15 order under Bankruptcy Rule 8003. That rule permits the district court to construe an improperly filed notice of appeal as a request for leave to appeal. In considering such a request, courts apply the test for interlocutory appeals to the circuit courts set forth in 28 U.S.C. § 1292(b). Thus, leave to appeal will be granted when the order appealed form "involves a controlling question of law as to which there is substantial ground for difference of opinion and ... an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *Whirlpool Leasing Servs., Inc. v. Nucor, Inc. (In re Nucor, Inc.)*, 116 B.R. 246, 247 (D.Colo. 1990). Twenver again has the burden to show it has met these requirements. *Robinson v. Silverman (In re Johns–Manville Corp.)*, 47 B.R. 957, 960 (S.D.N.Y.1985); *Richmond v. Peterson (In re Peterson)*, 12 B.R. 961, 962 (D.Colo.1981).

■ Twenver cites no authority indicating how the issue of court approval of a topping fee is characterized or under what standards it should be resolved. In my opinion, whether the fee is justified is a question of fact depending upon the circumstances at issue. *See In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. at 28. It does not appear to be a controlling question of law as to which there is a substantial basis for difference of opinion. Courts have generally recognized that "breakup fees are not illegal where they enhance rather than hamper bidding. Breakup fees and other strategies may 'be legitimately necessary to convince a "white knight" to enter the bidding by providing some form of compensation for the risks it is undertaking.'" *Id.* (citing *Samjens Partners I v. Burlington Indus., Inc.*, 663 F.Supp. 614, 624 (S.D.N.Y. 1987); *see also Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 578 (11th Cir. 1988); *CRTF Corp. v. Federated Dept. Stores, Inc.*, 683 F.Supp. 422, 440 (S.D.N.Y. 1988)). Thus, Twenver's appeal fails under the first branch of the § 1292(b) test.

In addition, immediate appeal of the April 15 order will do little to further the administration of this case. As explained above, there is no certainty that Pennsylvania BancShares will be paid a topping fee. The three contingencies outlined in the order must be met. Again, Twenver's only justification on this score is that approval of the topping fee has a "chilling effect" on other bidders. This bare speculation is insufficient to justify an interlocutory appeal.

## III. *Conclusion.*

The bankruptcy court's April 15 order approving the topping fee did not conclusively resolve any issue central to the administration of the bankruptcy proceeding. Twenver has not lost the right to appeal any subsequent order actually authorizing payment of the fee, and it has not justified an immediate appeal under the collateral order doctrine or the principles of interlocutory appeal. The motion to dismiss this appeal is GRANTED.