953 F.2d 638
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John F. FLOYD, Plaintiff-Appellant,
v.
ROYAL INSURANCE COMPANY OF AMERICA; Reidman Corporation,
Defendants-Appellees,
v.
MARINE SURVEYORS, INCORPORATED; New River Yacht Sales,
Third Party Defendants.
 No. 91-1584.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 30, 1991.
Decided Jan. 9, 1992.
 
 Appeal from the United States District Court for the District of South Carolina, at Greenville, No. CA-90-1026-6-3, G. Ross Anderson, Jr., District Judge.
 Argued: Edward Randolph Cole, Drennan, Shelor, Cole & Evins, P.A., Spartanburg, S.C., for appellant; Brent O. E. Clinkscale, Haynsworth, Marion, McKay & Guerard, Greenville, S.C., for appellee Riedman Corporation; Nathaniel Heyward Clarkson, III, Gibbes & Clarkson, Greenville, S.C., for appellee Royal Insurance Company.
 On Brief: G. Dewey Oxner, Jr., Brent Overton, Haynsworth, Marion, McKay & Guerard, Greenville, S.C., for appellee Riedman Corporation; Charles S. Mauney, Gibbes & Clarkson, Greenville, S.C., for appellee Royal Insurance Company.
 D.S.C.
 DISMISSED.
 Before PHILLIPS and LUTTIG, Circuit Judges, and GERALD W. HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 OPINION
 GERALD W. HEANEY, Senior Circuit Judge:
 
 
 1
 John F. Floyd appeals from the district court's grant of summary judgment to Royal Insurance Company of America (Royal) and Reidman Corporation (Reidman). Floyd sued Royal, his insurer, and Reidman, his insurance agent and broker, for damages arising from the destruction of a 46-foot fishing yacht in Hurricane Hugo off the South Carolina coast in September 1989. We dismiss the appeal for lack of jurisdiction.
 
 
 2
 From 1984 through 1988, Floyd had purchased annual insurance policies of $237,000 on the yacht from Royal through Ralph Mitchell, a Reidman employee who handled all Floyd's insurance needs. The insurance also included $500 coverage for personal property aboard the yacht. Floyd had paid $237,000 for the yacht, which was appraised in 1984 as being worth $260,000.
 
 
 3
 In October 1987, a Royal underwriter requested Floyd's permission to have the yacht surveyed to determine its value. Floyd agreed and asked that he be sent a copy of the survey. Floyd claims that the Royal employee agreed to do this, but Floyd never received a copy of the survey. Royal claims that its policy is never to release the results of surveys it performs at its own expense. The survey estimated the yacht's value at between $229,350 and $251,900.
 
 
 4
 In October 1988, Floyd and Mitchell discussed renewal of the policy on the yacht for 1989. Believing that the yacht may have depreciated in value since its purchase, Floyd and Mitchell together arrived at $200,000 as the probable current value. Floyd agreed to renew the policy for this amount, but asked Mitchell to obtain the results of Royal's survey and to adjust the amount of coverage if necessary to conform with the surveyed value. Royal had furnished Reidman with a firm quotation to renew the policy at $237,000 for 1989, but Floyd claims that Mitchell never told him about this offer.[1]
 
 
 5
 Royal renewed the policy at an agreed value of $200,000 and Floyd paid the premium, which was about $1,000 less than the previous year's premium. Mitchell was incapacitated by a stroke in the summer of 1989 and died in early 1990. He never obtained the results of Royal's survey on the yacht.
 
 
 6
 On September 22, 1989, Hurricane Hugo capsized the yacht. Royal hired Marine Surveyors, Inc., an insurance adjusting firm, to survey the loss. The yacht was judged to be a total loss and was sold as salvage to New River Yacht Sales. Floyd and his captain visited the yacht shortly after the hurricane to try to remove some personal property from it. They retrieved some items, but because the boat was upside down in the water, filled with diesel fuel, and quite unstable, they could not get inside it. Floyd notified Marine Surveyors and New River Yacht Sales that he wanted to retrieve a fighting chair, two helms chairs, a life raft, and a fishing log book from the yacht, and asked that he be notified when the salvage operation took place. Floyd was not notified when the yacht was pulled out of the water. He retrieved a portion of the broken fighting chair from the yacht after it had been moved to a shipyard, where a friend of Floyd saw it and alerted Floyd.
 
 
 7
 Royal received $5,000 for the salvage of the boat, which it tendered to Floyd and which Floyd accepted. After the hurricane, Floyd obtained the results of Royal's survey on the yacht from the company that performed the survey. He then refused to accept from Royal its tendered payment of $195,500 on the insurance policy. Instead, he commenced this diversity action against Royal and Reidman. Floyd sought reformation of the insurance policy to conform with the survey. He also alleged that Royal and Reidman breached their duty of utmost good faith as marine insurers by failing to disclose to Floyd the survey valuation, for which he sought actual and punitive damages and attorney's fees. Floyd also alleged against Royal negligent salvage of the boat, conversion of $175,000 worth of his personal property, and violations of the South Carolina Unfair Trade Practices Act. Royal and Reidman both moved for summary judgment and a hearing was held on March 8, 1991.
 
 
 8
 The hearing transcript indicates that Floyd learned of Royal's 1988 offer to renew the policy on the yacht for $237,000 only ten days before the hearing. See supra note 1. On discovering this information, Floyd's counsel apparently wrote to counsel for Royal and Reidman expressing his intention to amend the complaint to include a cause of action for negligence against Reidman for failing to disclose this offer to Floyd. Floyd's counsel stated at the hearing that defense counsel had responded that a motion to amend the complaint would be untimely at that point.[2] A brief colloquy about the negligence issue ensued, but Floyd's counsel never articulated on the record a formal, oral motion to amend the complaint.[3]
 
 
 9
 At the close of the hearing, the district court gave Floyd five days to file a memorandum supporting his arguments and opposing defendants' summary judgment motions. The district court entered its order and judgment granting the defendants' motions on April 26, 1991.[4]
 
 
 10
 The district court's order neither discussed a claim for negligence against Reidman nor disposed of a motion to amend the complaint to include such a claim. The court's order did state, however, that Floyd filed a "memorandum in opposition" and a "supplemental memorandum in opposition" after the hearing. Floyd claims that these memoranda extensively briefed the negligence issue. Neither of these pleadings, however, appears on the district court docket sheet or in the district court record.
 
 
 11
 This court has jurisdiction over "appeals from final decisions of the district courts." 28 U.S.C. § 1291 (1988). The Supreme Court has interpreted this language to preclude appeal from "any decision which is tentative, informal, or incomplete." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). In an action involving multiple claims or multiple parties, a judgment is final for appeal purposes only if it disposes of all the claims of all the parties. Fed.R.Civ.P. 54(b).[5]
 
 
 12
 The ambiguous status of Floyd's oral motion to amend the complaint suggests that the district court's grant of summary judgment to the defendants is not, in fact, a final decision within the meaning of our statutory grant of jurisdiction. While we can find no such motion in the transcript of the hearing held on March 8, 1991, all parties concede that such a motion was made. Although the district court's order includes no discussion of Floyd's motion or the issue of Reidman's negligence, Floyd claims that he filed two memoranda supporting a cause of action for negligence against Reidman after the March 8 hearing. The defendants do not dispute this assertion, and the district court refers in its order to two memoranda filed by Floyd on March 13 and March 27. Neither of these memoranda, however, appears on the district court docket sheet or in the district court record.
 
 
 13
 Reidman and Royal urge us to conclude that the district court impliedly denied Floyd's motion to amend, a ruling which we could review only for abuse of discretion. Floyd suggests that the district court impliedly granted his motion and considered and rejected the negligence claim sub silentio, making the merits of the claim ripe for our review. Either of these conclusions, however, requires assumptions on our part which the incomplete record before us simply cannot support.
 
 
 14
 We conclude that Floyd's motion to amend somehow "fell through the cracks" at the district court level, and the district court neglected to rule on it. The district court's failure to adequately dispose of this motion deprives its decision of finality and precludes appellate review. Accordingly, we dismiss the appeal for lack of jurisdiction.
 
 
 15
 DISMISSED.
 
 
 16
 PHILLIPS and LUTTIG, Circuit Judges, joined.
 
 
 
 [1]
 Floyd claims that he first learned of Royal's offer to renew the policy at $237,000 during a deposition of a Royal employee ten days before the hearing on the defendants' summary judgment motions
 
 
 [2]
 Floyd had already amended the original complaint once to add Reidman as a defendant under the causes of action for reformation and bad faith
 
 
 [3]
 All parties conceded in briefs and oral argument before this court that Floyd's counsel made an oral motion at the hearing to amend the complaint to include a negligence claim against Reidman. Even a generous reading of the transcript, however, discloses no such motion
 
 
 [4]
 The district court held that Floyd could not obtain reformation of the policy against Royal because there was no mutual mistake, and reformation was unavailable against Reidman because it was not a party to the contract. Similarly, although South Carolina recognizes an action for bad faith against an insurer, its elements include a bad faith refusal by the insurer to pay benefits due under the contract. Royal had attempted to tender the agreed value of the policy. Because no mutually binding insurance contract existed between Floyd and Reidman, Floyd had no action for bad faith against Reidman. The court held that Floyd's remaining claims against Royal failed because the insurance policy had been for an agreed value of $200,000 with $500 personal property coverage. Royal had fulfilled its obligations under the policy by tendering its agreed value. Finally, the court noted that the South Carolina Unfair Trade Practices Act addresses only unfair or deceptive practices which have an impact on the public interest, and is not available to redress private wrongs or breaches of contract
 
 
 [5]
 Rule 54(b) states:
 [T]he court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties[.]
 Fed.R.Civ.P. 54(b).