NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-4526
_____

THADDEUS JAMES THOMAS; RONALD NASH

v.

CHRISTOPHER CHRISTIE, Individually and in his capacity as Governor,
PAULA T. DOW, ESQ. Individually and in her capacity as Attorney General;
GARY M. LANIGAN; Individually and in his capacity as Commissioner of the
Department of Human Service; JENNIFER VELEZ, ESQ. Individually and in her
capacity as Commissioner of the Department of Human Services; JOHN MAIN,
Individually and in his capacity as Director of the Department of Human Services;
JONATHAN POAG, Individually and in his capacity as Director of the Division of
Mental Health Services a/k/a the Division of Mental Health and Addiction Services;
MERRILL MAIN, Individually and in her capacity as Clinical Director of the Special
Treatment Unit Annex; SHANTAY BRAIM ADAMS, Individually and in her capacity
as  Assistant Director of the Special Treatment Unit Annex; JACKIE OTTINO,
Individually and in her capacity as Program Coordinator of the Special Treatment Unit
Annex;  JOHN/JANE DOES, 1-10, Individually and in their official capacities


Gary Lanigan; Jennifer Velez; John Main; Jonathan Poag,
Merrill Main; Shantay Braim Adams; Jackie Ottino,
                                                          Appellants
_____

On Appeal from the United States District Court for the District of New Jersey
(District Court Civil Nos.  2-10-cv-02113, 2-10-cv-05026)
District Judge:  Honorable Dickinson R. Debevoise

Argued September 9, 2015

BEFORE:  VANASKIE, NYGAARD, and RENDELL, *Circuit Judges*

John J. Hoffman, Acting Attorney General of New Jersey
David L. DaCosta, Esquire [Argued]
Daniel M. Vannella, Esquire
Theodore F. Martens, III, Esquire
Office of Attorney General of New Jersey
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ 08625

      Counsel for Appellants


Lawrence S. Lustberg, Esquire
Ana I. Munoz, Esquire [Argued]
Gibbons
One Gateway Center
Newark, NJ 07102

      Counsel for Appellee Thaddeus James Thomas

Michael R. Yellin, Esquire
Cole Schotz
25 Main Street
Court Plaza North, P.O. Box 800
Hackensack, NJ 07601

      Counsel for Appellee Ronald Nash

_____

OPINION[*]
_____

NYGAARD, *Circuit Judge.*

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellants Gary Lanigan, Jennifer Velez, John Main, Jonathan Poag, Merrill Main, Shantay Braim Adams, and Jackie Ottino assert that the District Court erred by failing to grant them qualified immunity—raised in their motion to dismiss—in a suit by Thaddeus James Thomas and Ronald Nash, who are civilly committed under the New Jersey Sexually Violent Predator Act. N.J.S.A. 30:4-27.24 to 27.38.[1] Plaintiffs raise Fourteenth Amendment Due Process claims. We will affirm the order of the District Court denying Appellants' motion to dismiss.

We have jurisdiction to review final decisions of a district court. 28 U.S.C. § 1291. However, we also have jurisdiction to hear appeals where a district court's order "finally determine[s] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). We can review an order denying a claim of qualified immunity because it puts at stake the Appellants' entitlement "not to be forced to litigate the consequences of official conduct" and it is therefore considered "conceptually distinct" from the merits of the action. *Mitchell v.*

_____

[1]On October 15, 2010, the District Court associated the cases brought by Thomas and Nash and the October 20, 2014 order appealed from applied to both cases. The appeal of that order has been docketed under one case number.

3

*Forsyth,* 472 U.S. 511 527-28 (1985).[2]  Nonetheless, we do not review the accuracy of the plaintiff's statement of facts, nor do we even decide if the plaintiff has actually stated a claim.  *Mitchell v. Forsyth,* 472 U.S. 511, 528 (1985).  Rather, our jurisdiction extends only to consider an issue of law, including:  "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions."  *Id.*

Appellants raise such an issue of law on appeal.  However, citing to *Rouse*, they contend more pointedly that the District Court erred by failing to conduct a "highly individualized inquiry" to determine whether Thomas and Nash properly pleaded the violations of a clearly established constitutional right.  *Rouse v. Plantier*, 182 F.3d 192, 200 (3d Cir. 1999).  They maintain that the District Court did not identify or address the particular conduct of each Appellant that allegedly violated Appellees' liberty interests.

A plaintiff must present enough facts about the conduct of each defendant to show that it is plausible that each defendant, individually, violated a clearly established right.  *Mitchell*, 472 U.S. at 526.  However, *Rouse*'s notion of a "highly individualized inquiry" arose in the context of summary judgment, and its application to the analysis of a District

_____

[2] We note a conflict in the District Court's memorandum opinion in this regard.  It states: "this Court concludes that, at this juncture, the DOC Defendants are not entitled to qualified immunity."  J.A. 59.  This suggests a decision that could be revisited at a later point in the litigation.  However, on the same page, the District Court implicitly certifies the qualified immunity issue for appeal, communicating its view that the denial of their qualified immunity is, indeed, final.   Given the District Court's thorough analysis of issues at hand and obvious command of applicable law, we will interpret the District Court's act of certifying this interlocutory appeal as expressing its intent to treat the denial of qualified immunity as a final disposition on the issue.

4

Court's denial of a motion to dismiss cannot be interpreted as imposing a heightened pleading standard.[3] Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). As *Iqbal* elaborated:

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(internal citations omitted). This is true as to each Appellant. However, the District Court makes its determination of plausibility by drawing inferences from the facts pleaded using its experience and common sense. *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 69 (3d Cir. 2011).

Appellants do not challenge the District Court's determination that the New Jersey Sexually Violent Predator Act created a liberty interest rooted in a mentally disabled prisoner's right to receive mental health treatment. Appellants also agree with the District Court that Thomas and Nash did not plead a violation of that right through respondeat superior liability. Rather this appeal centers on the District Court's conclusion that the complaints adequately plead claims that Appellants' policy decisions

_____

[3]"[T]he question is whether a reasonable public official would know that his or her *specific conduct* violated clearly established rights. . . .Thus, crucial to the resolution of any assertion of qualified immunity is a careful examination of the record . . . to establish, for purposes of summary judgment, a detailed factual description of the actions of each individual defendant. . . . " *Rouse v. Plantier*, 182 F.3d 192, 200 (3d Cir. 1999) (quoting *Grant v. City of Pittsburgh,*, 98 F.3d 116, 121-22 (3d Cir. 1999).

(specifically those that ultimately were the moving force behind changes in and/or denial of Thomas' and Nash's prescribed medical care for non-medical reasons) violated their liberty interests.[4]

The Supreme Court noted that a core concept "animating" the qualified immunity doctrine is whether each "official's duties legitimately require action" implicating clearly established rights. *Mitchell*, 472 U.S. at 525 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 819 (1982)). The District Court correctly reasoned from our precedent that the standard for holding officials liable in their individual capacity for deliberately indifferent wrongs is whether there is at least circumstantial evidence to plausibly infer that:

> (a) [the] supervising officials make systemwide determinations; (b) these determinations become the moving force behind the circumstances under which the subordinate officers effectively have no choice but to deny/reduce/change an inmate''s prescribed medical/mental treatment for non-medical reasons; and (c) such denial/reduction/change in prescribed treatment was foreseeable under the systemwide determinations the supervisors made.

_____

[4]The District Court noted that Thomas and Nash alleged their mental health treatment had been consistently maintained for approximately ten years at the Kearney, New Jersey facility. The District Court inferred that ten years of consistent therapy reasonably implied a prescribed treatment, rather than simply a random program. Thomas and Nash further alleged that their treatment was abruptly altered after their transfer to the East Jersey State Prison special housing unit. Thomas claims that treatment was completely curtailed because construction in the segregated housing unit in which he was housed prevented allocation of any space to conduct his treatments. The District Court inferred from this that Thomas and Nash were pleading that the change in treatment was not grounded in any medical reason.

J.A. 43-44 (citing *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993); *White v. Napolean,* 897 F.2d 103 (3d Cir. 1990); *Brown v. Plata* 563 U.S. 493 (2011); and *Leamer v. Fauver*, 288 F.3d 532 (3d Cir. 2002)).

Appellants are convinced that Thomas and Nash did not sufficiently plead such facts because the complaints do not allege the particular acts of each that violated that right. Appellants also maintain that the District Court glossed over this shortcoming of the complaints by making impermissible references to sources outside the complaints, and by referring to the Appellants generically as "DOC defendants." In particular, Appellants point to the District Court's discussion of N.J. Stat. Ann. 30:4-27.34,[5] a particular executive order of Governor Whitman's (Executive Order 118), and the ruling in *County of Hudson v. State Dept. of Correction,* (2009 N.J. Super Unpub. LEXIS 1188, at *2-16), contending that these (rather than the pleadings) grounded the District Court's

_____

[5] " a. The Department of Corrections shall be responsible for the operation of any facility designated for the custody, care and treatment of sexually violent predators, and shall provide or arrange for custodial care of persons committed pursuant to this act. Except as may be provided pursuant to subsection c. of section 9 of this act, a person committed pursuant to this act shall be kept in a secure facility and shall be housed and managed separately from offenders in the custody of the Department of Corrections and, except for occasional instances of supervised incidental contact, shall be segregated from such offenders. b. The Division of Mental Health Services in the Department of Human Services shall provide or arrange for treatment for a person committed pursuant to this act. Such treatment shall be appropriately tailored to address the specific needs of sexually violent predators. c. Appropriate representatives of the Department of Corrections and the Department of Human Services shall participate in an interagency oversight board to facilitate the coordination of the policies and procedures of the facility." N.J. Stat. Ann. § 30:4-27.34.

inferences that led it to conclude that the constitutional right was clearly established here. We disagree.

As the District Court stated, Thomas and Nash have pleaded that each official's "*own* decisions and acts" causally connected Appellants to the reduction or elimination of prescribed treatment. J.A. 51. Towards this end, they state each Appellant's job title within the Department of Corrections and Department of Human Services (J.A. 15-16), and they specify the particular types of policy decision and rulemaking responsibilities each had that was relevant to the housing and care of Thomas and Nash.[6] Moreover, the pleadings focus upon disruptions in treatment occurring after Thomas and Nash were transferred from the Kearney facility to the East Jersey State Prison, inextricably intertwining the constitutional violation claims about treatment disruptions with policy decisions concerning the transfer.[7]

_____

[6]The complaint averred the following responsibilities: Gary Lanigan—determining all matters of policy and rules for state Department of Corrections civil commitment facilities and policy and procedures of Department of Corrections staff; Jennifer Velez—determining matters of policy and rules governing state mental health facilities and developing and implementing treatment plans; John Main—determining policy and rules governing mental health facilities developing and implementing treatment plans; Jonathan Poag—developing and providing operational support for state mental health facilities, supervising Department of Human Services staff at civil commitment facilities, and developing and implementing treatment plans for civilly committed residents. Merril Main—treatment planning and administration of Special Treatment Units. Shantay Braim Adams—treatment planning and administration of Special Treatment Units. Jackie Ottino—treatment planning and administration of Special Treatment Units. J.A. 88-89.

[7] *See* supra, note 4.

The District Court's review of the complaints highlights the rather unique alignment between the specific right at issue and the particular decision-making responsibilities of each Appellant that enabled it to reach a conclusion about whether the right was clearly established. The District Court noted that Thomas and Nash were pleading that a subset of the decisions these officials made were at issue—those related to the movement of the sexually violent predator program from Kearney to East Jersey State Prison. It said "the decisions and acts at issue, by their very nature, could not have possibly escaped the scope of the DOC defendants' personal responsibilities."[8] J.A. 51-52. Given the alignment between the distinct scope of decisions at issue and Appellants' job responsibilities, this is a reasonable inference.

Moreover, the District Court viewed the liberty interest at issue to be well defined, saying that this constitutional right is "scalpel-narrow" and has been the subject of extensive "practical guidance" for over a decade. J.A. 57. Therefore, as to these officials, and this subset of decisions concerning the management of the sexually violent predator program, it was reasonable for the District Court to conclude that Appellants had "fair warning" of the constitutional implications of any decision foreseeably resulting in

_____

[8]We do not attach significance to the District Court's reference to "DOC defendants." Although this short-hand reference was technically inaccurate, the District Court was plainly aware that Appellants were officials from different parts of state government with different responsibilities. J.A. 15-16.

"denying, reducing or changing Plaintiffs' prescribed mental treatment for non-medical reasons." *Id.* [9]

To the extent that the District Court's review of the statute, executive order, and state court case were relevant to its qualified immunity analysis, these judicially cognizable sources underscored the reasonableness of the District Court's conclusions. The District Court's reading of the statute was consistent with the pleadings alleging each official's responsibilities. Moreover, the Executive Order and the ensuing decade-long litigation over the location of the sexually violent predator program provided further evidence that the state government was engaged in decision making, consistent with the pleadings, that was directly relevant to the housing and treatment of both Thomas and Nash, sexually violent predators who have been detained at the facilities at the center of the Executive Order and state court case. [10] We do not regard these sources as the foundation of the District Court's qualified immunity analysis. But, there is no doubt that they support the reasonableness of the District Court's conclusion that the complaints plausibly pleaded sufficient facts suggesting that each official violated a clearly

_____

[9] Evidence that the District Court was aware that the pleadings were not (as Appellants allege) so vague that any state official could be ascribed responsibility is found in the fact that it dismissed Governor Christie and Attorney General Dow from the suit because the pleadings failed to "nudge [their] claims [enough to] cross the line from conceivable to plausible." J.A. 52 (quoting *Iqbal*, 556 U.S. at 680-81).

[10] "[T]his Court has no reason to conclude that the already-adjudicated fact of the decade-long focused search/decision-making as to the facility where Plaintiffs would be placed (as well as Defendants' more-than-a-year-long focused process of supervising preparation and fixing the SHU) fails to show personal involvement of Defendants in the wrongs alleged here." J.A. 51, n. 35.

established right.  Therefore, the District Court correctly concluded that Appellants'

claim of qualified immunity failed.

For these reasons, we will affirm the order of the District Court.