NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4730
_____

In re: DIET DRUGS (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability
Litigation

Elizabeth A. Lassetter,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 99-cv-20593; MDL Nos. 11-md-1203 and 16-md-1203)
District Judge:  Hon. Harvey Bartle, III
_____

Submitted Under Third Circuit LAR 34.1(a)
July 11, 2014

Before:   RENDELL, CHAGARES, and JORDAN, *Circuit Judges*.

(Filed: July 14, 2014)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge.*

Elizabeth Lassetter appeals an order of the United States District Court for the

Eastern District of Pennsylvania denying her recovery under the terms of the Diet Drug

Nationwide Class Action Settlement Agreement ("Settlement Agreement").[1]  We will affirm.

## I.     Background

This appeal relates to the settlement of multi-district products liability litigation regarding the diet drugs Pondimin® and Redux®, previously sold by American Home Products ("AHP").  *See In re Diet Drugs Prods. Liab. Litig.*, 543 F.3d 179, 180-81 (3d Cir. 2008).  In November 1999, Wyeth, the successor-in-interest to AHP, joined plaintiffs' representatives in the Settlement Agreement, which the District Court approved.  *See id.* at 181.  Under the terms of the Settlement Agreement, Wyeth was required to contribute funds, placed in a trust, for the payment of claims.  *See id.* at 180. The resulting AHP Settlement Trust (the "Trust"), acting through its trustees and claims administrator, administers and reviews claims to determine the benefits, if any, that a class member is qualified to receive under the terms of the Settlement Agreement.  *See id.*[2]

---

[1] Lassetter is one of three claimants who have appealed simultaneously through the same counsel, the others being Ruth Sanders (Case No. 13-4548) and Tonya Marler (Case No. 13-4731).  All three relied on the same attesting physician in submitting their claims; they appeal the same issue – whether there was a reasonable medical basis to conclude they all suffered from moderate mitral regurgitation; and they raise the same arguments.  The briefs on appeal are almost identical, as are the  District Court's opinions regarding each claimant.  For efficiency's sake, then, we designate our opinion regarding Ruth Sanders as primary and a source of further background.

[2] In several prior decisions, we have provided a detailed description of the Diet Drugs litigation.  *See*, *e.g.*, *In re Briscoe*, 448 F.3d 201, 206-08 (3d Cir. 2006); *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 147-48 (3d Cir. 2005); *In re Diet Drugs Prods. Liab. Litig.*, 385 F.3d 386, 389-92 (3d Cir. 2004); *In re Diet Drugs Prods. Liab. Litig.*,

In August 2002, Lassetter filed a claim with the Trust pursuant to the procedures set forth in the Settlement Agreement for so-called Matrix Level II benefits. Her claim included, as required for Level II benefits, the statement of an attesting physician diagnosing her with moderate mitral regurgitation, based on her echocardiogram. Upon review, the Trust's auditing cardiologist concluded that there was a reasonable medical basis (the applicable standard under the Settlement Agreement) for the attesting physician's finding that Lassetter suffered from moderate mitral regurgitation. However, the District Court, inundated with fraudulent benefits claims, ordered a second review of claims, including Lassetter's, to determine whether she intentionally misrepresented details of her echocardiogram test. Following that review, the Trust denied the claim and affirmed its decision in a Final Post Audit Determination.

Lassetter disputed the second audit's adverse finding, and the Trust applied to the District Court for an Order to Show Cause why Lassetter's claim should be paid. The District Court issued the Order and referred the case to a Special Master for further proceedings. The parties submitted statements of the case to the Special Master, and the Special Master appointed a Technical Advisor to prepare a report for the District Court's review. Like the second auditing cardiologist, the Technical Advisor concluded that there existed intentional misrepresentation of the echocardiogram test and further determined that there was no reasonable medical basis for finding that Lassetter had moderate mitral regurgitation. Both the parties' statements and supporting

282 F.3d 220, 225-29 (3d Cir. 2002). We will therefore limit our discussion to the essential facts of the instant appeal.

3

documentation, as well as the Technical Advisor's report, were submitted to the District

Court for review in making its decision on the Order to Show Cause. After a thorough

review of the record before it, the District Court denied Lassetter's claim, based on the

audit conclusion that there was no reasonable medical basis for the diagnosis submitted

with the claim.

## II.    Discussion[3]

On appeal, Lassetter argues that the evidence in the record met the burden of proof

establishing a reasonable medical basis for the attesting physician's conclusion and that

the Court erred by deputizing the Technical Advisor with judicial power.[4]

With respect to both of Lassetter's arguments, we conclude that she has failed to

show any abuse of discretion in the District Court's interpretation or factual findings.

The Court performed a thorough review of the record before it, including both parties'

statements and the opinions of both auditing cardiologists, the Technical Advisor, and

Lassetter's own attesting physician. The Technical Advisor also acted within the

limitations set by the Settlement Agreement; he introduced no evidence and relied only

on the submitted materials in forming his opinion. The Court did not delegate its

---

[3] The District Court had jurisdiction over all terms of the Settlement Agreement under 28 U.S.C. §§ 1332 and 1407. We exercise jurisdiction over a final order of the District Court pursuant to 28 U.S.C. § 1291. "We review a District Court's exercise of its equitable authority to administer and implement a class action settlement for abuse of discretion." *In re Diet Drugs Prods. Liab. Litig.*, 543 F.3d at 184 n.10. An abuse of discretion may be found if the District Court's decision "rest[s] on a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id.* (citation omitted) (internal quotation marks omitted).

[4] Lassetter also brings other meritless arguments that we address in *In re Diet Drugs Products Liability Litigation (Sanders)*, No. 13-4548, at *6 n.6.

4

authority to the Technical Advisor in affirming the Trust's denial of Lassetter's claim, as evidenced by its detailed memorandum opinion. Accordingly, the Court's reliance on the Technical Advisor was not an abuse of discretion.

## III. Conclusion

For the foregoing reasons, we will affirm.