NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1780
_____

IN RE: DIET DRUGS (PHENTERMINE/FENFLURAMINE/DEXFENFLURAMINE)
PRODUCTS LIABILITY LITIGATION

Judith Brown,
                                        Appellant
_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-99-cv-20593; MDL Nos. 2-11-md-01203 and 2-16-md-01203)
District Judge:  Hon. Harvey Bartle, III
_____


Submitted Under Third Circuit L.A.R 34.1(a)
November 17, 2014

Before:   RENDELL, JORDAN, and NYGAARD, *Circuit Judges*.

(Filed: December 16, 2014
_____

OPINION*
_____


_____

    * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

JORDAN, *Circuit Judge.*

Judith Brown appeals an order of the United States District Court for the Eastern District of Pennsylvania denying her recovery under the terms of the Diet Drug Nationwide Class Action Settlement Agreement ("Settlement Agreement"). We will affirm.

## I. Background

This appeal is one of many relating to the settlement of multi-district products liability litigation regarding the diet drugs Pondimin® and Redux®, previously sold by American Home Products Corporation ("AHP"). *In re Diet Drugs Prods. Liab. Litig.*, 543 F.3d 179, 180-81 (3d Cir. 2008). In November 1999, Wyeth, the successor-in-interest to AHP, entered into the Settlement Agreement with plaintiffs' representatives, which the District Court approved after conducting fairness proceedings. *Id.* at 181. Under the terms of the Settlement Agreement, Wyeth was required to place funds in a trust for claim payments. *Id.* at 180. The resulting AHP Settlement Trust (the "Trust") administers and reviews claims to determine the benefits, if any, that a class member is qualified to receive under the terms of the Settlement Agreement. *Id.*[1]

---

[1] In several prior decisions, we have provided a detailed description of the diet drugs litigation. *See*, *e.g.*, *In re Briscoe*, 448 F.3d 201, 206-08 (3d Cir. 2006); *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 145-48 (3d Cir. 2005); *In re Diet Drugs Prods. Liab. Litig.*, 385 F.3d 386, 389-92 (3d Cir. 2004); *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 225-29 (3d Cir. 2002). We will therefore limit our discussion to the pertinent facts of the instant appeal.

This appeal is by one of the class members, Judith Brown, who sought compensation benefits under the Settlement Agreement. She based her claim on an echocardiogram performed in 2002 after she had ingested Redux® for over 6 months. Having reviewed the echocardiogram, an attesting physician, Dr. Howard Brazil, indicated on Brown's claim that she had "[m]oderate mitral regurgitation" (App. at 1057), meaning the heart valve separating her upper and lower heart chambers fails to close properly, causing leakage. Under the Settlement Agreement, moderate mitral regurgitation is one of the qualifying medical conditions for compensation. Upon initial review, the Trust's auditing cardiologist agreed that there was a "reasonable medical basis"[2] to support Dr. Brazil's representations and that Brown's claim was potentially payable. (App. at 1076-78.)

Unfortunately, the Trust was inundated with suspect claims that included manipulated echocardiogram test results. *See In re Diet Drugs*, 543 F.3d at 182 n.4 (noting that "a significant proportion of the [claim] submissions came from a few law firms which carried out mass screening programs in which cardiologists retained by the firms made unreasonable judgments on a broad scale concerning the existence, history, nature, and degree of heart-valve disease claimed" (internal quotation marks omitted)). In light of that problem, and during the pendency of Brown's claim, the District Court imposed a stay on the processing of claims pending implementation of the Seventh

---

[2] Under the Settlement Agreement Audit Rules, a "reasonable medical basis" is the standard that an auditing cardiologist applies in determining the validity of a medical diagnosis serving as the basis for a claim. (App. at 1334.) *In re Diet Drugs*, 543 F.3d at 183-84.

3

Amendment to the Settlement Agreement. Prior to the entry of the stay, the Trust identified nearly one thousand claims that were payable based on the initial audit, which were designated as "Pre-Stay Payable Post-Audit Determination Letter (PADL) Claims." (App. at 7.) Pursuant to Paragraph 5(a) of Pretrial Order 3883, the Trust was ordered to identify the claims it alleged were the product of "intentional manipulation," which are referred to as "5(a) claims." (Supp. App. at 227.) Of the nearly one thousand PADL claims, the Trust identified over half of them, including Brown's claim, as containing intentional material misrepresentations of fact. On March 6, 2007, the Trust issued a determination letter rejecting Brown's claim based on "substantial evidence of intentional material misrepresentation of fact." (App. at 1096-97.) The letter included a declaration of another auditing cardiologist, Dr. Joseph Kisslo, who, in addition to agreeing with the Trust's ultimate determination of intentional misrepresentation, concluded that there was no reasonable medical basis for finding moderate mitral regurgitation based on Brown's echocardiogram.

Brown then submitted a Contest of Audit Findings pursuant to Audit Rule 18 of the Settlement Agreement, to which she attached affidavits from three individuals – Dr. Brazil, a sonographer, and the owner of the company that performed the echocardiogram – attesting that the echocardiogram was performed according to the Settlement Agreement's criteria. After reviewing those additional materials, the Trust reaffirmed in a Final Post-Audit Determination its finding of intentional material misrepresentation and concluded that it would deny compensation benefits to Brown.

4

Brown formally disputed the Trust's Final Post-Audit Determination, and the Trust subsequently applied to the District Court to require Brown to show cause why her claim should be paid. The District Court issued a show-cause order and referred Brown's claim to a Special Master, who in turn appointed a Technical Advisor, Dr. Gary Vigilante, to review the claim. Dr. Vigilante issued a Technical Advisor Report, as required by the Settlement Agreement, in which he concluded that the echocardiogram "was not conducted in a manner consistent with medical standards" and he agreed with Dr. Kisslo that there was no reasonable medical basis for Dr. Brazil's finding of moderate mitral regurgitation. (App. at 1204.) The District Court affirmed the Trust's denial of benefits. It reviewed the show-cause record, including Dr. Vigilante's report and the parties' statements of the case, and found that Brown had failed to meet her burden of proving that a reasonable medical basis existed to support her claim. The Court declined to reach the misrepresentation issue. Brown timely appealed.

## II.    Discussion[3]

Although Brown raises six arguments, only two warrant discussion.[4] First, Brown contends that the evidence in the record met the burden of proof for establishing a

---

[3] The District Court had jurisdiction over all terms of the Settlement Agreement under 28 U.S.C. §§ 1332 and 1407. Although the District Court's order is not a final judgment, we exercise jurisdiction pursuant to 28 U.S.C. § 1291 and the collateral order doctrine. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546-47 (1949). "We review a District Court's exercise of its equitable authority to administer and implement a class action settlement for abuse of discretion." *In re Diet Drugs*, 543 F.3d at 184 n.10. An abuse of discretion may be found if the District Court's decision "rest[s] on a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Id.* (citation and internal quotation marks omitted).

5

reasonable medical basis for Dr. Brazil's Green Form. Second, Brown argues that the Court erred by deputizing the Technical Advisor with judicial power. Neither argument is persuasive.

The District Court's determination was not an abuse of discretion. "The test is not what this court would have done under the same circumstances; that is not enough. We must feel that only one order could have been entered on the facts." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 320 (3d Cir. 2001) (citation and internal quotation marks omitted). Brown fails to show that the only conclusion that could be drawn from her echocardiogram is that she suffered from moderate mitral regurgitation. As the District Court noted, she failed to rebut the opinions of Dr. Vigilante and Dr. Kisslo on that issue, relying solely on her own cardiologist's differing opinion. But disagreement alone does not foreclose contrary conclusions. Because Brown has not met

---

[4] We do not rely on our earlier non-precedential opinions for authority, and, despite similarities to other cases we have addressed recently, *In re Diet Drugs*, 573 F. App'x 178 (3d Cir. 2014); *In re Diet Drugs*, 573 F. App'x 182 (3d Cir. 2014); *In re Diet Drugs*, 573 F. App'x 184 (3d Cir. 2014), the result here is arrived at independently of those cases. Brown's due process and fraud arguments, as well as those based on pretrial orders and the Settlement Agreement itself, are without merit. The Settlement Agreement expressly authorized the District Court to deny a claim "[i]f the Court determines that there was no reasonable medical basis to support a material representation made by a physician in support of a Claim" and allowed the Court to direct "such additional audits and/or adopt such additional claims administration procedures as the Court deems appropriate." (Supp. App. at 126.) Thus, the Court was permitted to re-audit and deny Brown's claim based on a lack of reasonable medical basis to support the claim, without reaching the issue of intentional misrepresentation, and Brown was on notice of the Settlement Agreement setting forth the Court's capabilities. As for fraud, the Settlement Agreement does not require the Trust or the Court to prove that cause of action in order to deny a claim.

her burden to show a reasonable medical basis for her alleged condition, she also has not demonstrated that the District Court's determination was an abuse of discretion.

Brown's argument concerning the Court's improper use of a Technical Advisor also fails. The Settlement Agreement Audit Rules permit a Special Master to assign a Technical Advisor to review the record and to prepare a report for the District Court "setting forth his/her opinions regarding the issue(s) in dispute in the audit." (App. at 1444.) The Technical Advisor also "act[s] as a sounding board for the judge – helping the jurist to educate himself in the jargon and theory disclosed by the testimony and to think through the critical technical problems." *Reilly v. United States*, 863 F.2d 149, 158 (1st Cir. 1988). After reviewing the District Court's memorandum opinion and the show-cause record, we are satisfied that the Court considered the entire record and did not rely solely on the Technical Advisor's report. There is no reason to believe the District Court "rubber stamp[ed]" the Technical Advisor's opinion. (Appellant's Br. at 33.)

## III. Conclusion

For the foregoing reasons, we will affirm.